Ben Travis (SBN 305641)
**BEN TRAVIS LAW, APC**
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
(619) 353-7966
ben@bentravislaw.com

Steve Cohen (*pro hac vice*)
**POLLOCK COHEN LLP**
111 Broadway, Suite 1804
New York, NY 10006
(212) 337-5361
Scohen@PollockCohen.com

Jacob Gardener (*pro hac vice*)
**WALDEN HARAN WILLIAMS LLP**
250 Vesey St., 27th Floor
New York, NY 10281
(212) 335-2965
jgardener@whwllp.com

*Attorneys for Plaintiffs Jenniffer Roiz,*
*Claudine Castillo, Candyce Marto, Kevin Maedel and the Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFFER ROIZ, CLAUDINE CASTILLO, CANDYCE MARTO, and KEVIN MAEDEL on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>CALIFORNIA PHYSICIANS' SERVICE DBA BLUE SHIELD OF CALIFORNIA, MAGELLAN HEALTH, INC., MAGELLAN HEALTHCARE, INC., and HUMAN AFFAIRS INTERNATIONAL OF CALIFORNIA,<br><br>                    Defendants. | Case No. 3:25-cv-09978-WHO<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**DATE:** August 5, 2026<br>**TIME:** 2:00pm<br>**LOCATION:** Via Zoom<br>**JUDGE:** Hon. William H. Orrick |

**TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ..........................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ..........................................................................3

BACKGROUND ..............................................................................................................................5

LEGAL STANDARD.......................................................................................................................7

ARGUMENT....................................................................................................................................7

I.    PLAINTIFFS STATE TWO CLAIMS FOR BREACH OF CONTRACT
      AGAINST BLUE SHIELD (COUNTS 1 AND 2)........................................................8

      A.    Count One – Plaintiffs' Contracts with Blue Shield...................................8

            1.    The FAC adequately alleges multiple breaches...........................8

            2.    The FAC adequately pleads damages .........................................11

      B.    Count Two – Contracts Between Plaintiffs' Employers and Blue Shield .............11

            1.    Plaintiffs have standing as third-party beneficiaries...................11

            2.    The FAC adequately alleges breaches and damages ..................13

II.   PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT AGAINST
      MAGELLAN (COUNT 3)...............................................................................................13

      A.    Plaintiffs Have Standing as Third-Party Beneficiaries .........................13

      B.    The FAC Adequately Alleges Multiple Breaches and Causation.........................15

III.  PLAINTIFFS STATE CLAIMS FOR BREACH OF THE IMPLIED
      COVENANT OF GOOD FAITH AND FAIR DEALING (COUNTS 4, 5, AND
      6) ...................................................................................................................................16

      A.    The Claims for Breach of the Implied Covenant Are Not Duplicative .................16

      B.    Defendants' Remaining Arguments Are Meritless................................................16

IV.   PLAINTIFFS STATE A UCL CLAIM (COUNT 7)...................................................17

      A.    Unlawful Conduct..............................................................................................17

      B.    Unfair Conduct..................................................................................................18

ii

C.      Fraudulent Conduct ...................................................................................... 18

D.      Defendants' Rule 9(b) and Reliance Objections Fail ............................................. 19

E.      Plaintiffs Allege Economic Injury ................................................................... 20

F.      Plaintiffs Allege Misconduct by Magellan ....................................................... 20

G.      Plaintiffs Have Standing to Seek Injunctive Relief ........................................... 21

H.      Plaintiffs Allege Grounds for Equitable Relief Against Magellan ...................... 21

V.      PLAINTIFFS STATE CLAIMS FOR INTENTIONAL AND NEGLIGENT MISREPRESENTATION (COUNTS 8 AND 9) ............................................................ 22

VI.      PLAINTIFFS STATE A CLAIM FOR RESTITUTION FOR UNJUST ENRICHMENT (COUNT 10) ....................................................................................... 22

VII.      ERISA DOES NOT PREEMPT ROIZ'S STATE LAW CLAIMS (COUNTS 7– 10) ................................................................................................................................ 23

VIII.      ROIZ STATES AN IMPROPER-DENIAL-OF-BENEFITS CLAIM (COUNT 11) ........ 25

A.      Roiz Was Not Required to Exhaust Administrative Remedies ........................... 25

B.      The FAC Establishes that Roiz Exhausted the Optional Grievance Process ......... 25

C.      Roiz Adequately Alleges Denial of Multiple Benefits ....................................... 26

IX.      ROIZ STATES A BREACH-OF-FIDUCIARY-DUTY CLAIM (COUNT 12) .............. 27

A.      Magellan Acted as a Fiduciary with Respect to the Conduct at Issue ................... 28

B.      The FAC Alleges Breaches of Multiple Duties .................................................. 28

C.      Roiz's Fiduciary-Duty Claim Is Not Duplicative ............................................. 30

X.      ROIZ STATES AN MHPAEA CLAIM (COUNT 13) ...................................................... 30

CONCLUSION ............................................................................................................................. 32

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS | Case NO. 3:25-cv-09978-WHO

**TABLE OF AUTHORITIES**

**Pages**

**Cases**

*Andrew P. v. Blue Cross of California,*
2025 WL 3637030 (N.D. Cal. Dec. 15, 2025)..................................................................... 37

*Angelo v. Centene Mgmt. Co., LLC,*
2021 WL 352434 (W.D. Tex. Feb. 2, 2021), 2021 WL 8083340 (W.D. Tex. Feb.
25, 2021) ........................................................................................................................ 10, 11

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)............................................................................................................... 7

*Bafford v. Northrop Grumman Corp.,*
994 F.3d 1020 (9th Cir. 2021) ............................................................................................ 28

*Baglione v. Health Net of California, Inc.,*
97 Cal. App. 5th 882 (Cal. Ct. App. 2023) .................................................................... 13, 14

*Ballaris v. Wacker Siltronic Corp.,*
2002 WL 926272 (D. Or. 2002).......................................................................................... 34

*Barker v. Am. Mobil Power Corp.,*
64 F.3d 1397 (9th Cir. 1995) .............................................................................................. 33

*Bass v. John Hancock Mut. Life Ins. Co.,*
10 Cal. 3d 792 (Cal. 1974).................................................................................................. 14

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)........................................................................................................... 7, 8

*Beluca Ventures LLC v. Aktiebolag,*
622 F. Supp. 3d 806 (N.D. Cal. 2022) ............................................................................... 25

*Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.,*
103 F.4th 597 (9th Cir. 2024) ............................................................................................. 28

*Brown v. Van's Int'l Foods, Inc.,*
2022 WL 1471454 (N.D. Cal. 2022) .................................................................................. 24

*California Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.,*
519 U.S. 316 (1997)............................................................................................................. 27

*Celador Int'l Ltd. v. Walt Disney Co.,*
347 F. Supp. 2d 846 (C.D. Cal. 2004) ............................................................................... 18

*County of Solano v. Vallejo Redevelopment Agency,*
75 Cal. App. 4th 1262 (1st Dist. 1999)............................................................................... 26

*Davidson v. Kimberly-Clark Corp.,*
889 F.3d 956 (9th Cir. 2018) .............................................................................................. 24

*Davis v. Capitol Recs., LLC,*
2013 WL 1701746 (N.D. Cal. Apr. 18, 2013) .................................................................... 18

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS | Case NO. 3:25-cv-09978-WHO

*DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*,
    852 F.3d 868 (9th Cir. 2017) ................................................................................ 31

*Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir. 2019) ......................................................................... 27, 28

*Desai v. CareSource Inc.*,
    250 N.E.3d 689 (Ohio Ct. App. 2d Dist. Montg. Cnty. 2024).......................... 10

*Doe v. Carelon Behav. Health, Inc.*,
    2026 WL 880639 (S.D.N.Y. Mar. 31, 2026) .................................................... 20

*Doe v. United States*,
    58 F.3d 494 (9th Cir. 1995) .............................................................................. 37

*Duff v. Centene Corp.*,
    565 F. Supp. 3d 1004 (S.D. Ohio 2021) ................................................ 9, 11, 12

*Durkin v. Mercedes-Benz USA LLC*,
    2025 WL 2263681 (N.D. Cal. July 15, 2025).................................................. 12

*Epperson v. Gen. Motors, LLC*,
    706 F. Supp. 3d 1031 (S.D. Cal. 2023).......................................................... 21

*Etminan v. Alphatec Spine, Inc.*,
    2024 WL 3941832 (S.D. Cal. Aug. 23, 2024) ................................................ 17

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*,
    528 U.S. 167 (2000)........................................................................................ 24

*Genomics v. Song*,
    709 F. Supp. 3d 847 (N.D. Cal. 2023) .............................................................. 8

*GiftCash Inc. v. Gap, Inc.*,
    2023 WL 8006856 (N.D. Cal. Nov. 17, 2023.................................................. 22

*Goonewardene v. ADP, LLC*,
    6 Cal. 5th 817 (Cal. 2019)......................................................................... 13, 16

*Guenther v. Lockheed Martin Corp.*,
    972 F.3d 1043 (9th Cir. 2020) ........................................................................ 33

*Harper v. Wausau Ins. Co.*,
    56 Cal. App. 4th 1079 (Cal. Ct. App. 1997) ................................................... 14

*Harvey v. Centene Mgmt. Co. LLC*,
    357 F. Supp. 3d 1073 (E.D. Wash. 2018)............................................. 10, 11, 12

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ........................................................................ 22

*In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*,
    2005 WL 1972565 (D. Or. 2005)..................................................................... 34

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) ............................................................ 24

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) .............................................................................. 22, 23

*In re Tracht Gut, LLC*,
    836 F.3d 1146 (9th Cir. 2016) ........................................................................................ 7

*Inland Nw. Renal Care Grp., LLC v. WebTPA Emp. Servs., LLC*,
    2020 WL 1866436 (W.D. Wash. Mar. 26, 2020), 2020 WL 1862607 (W.D. Wash.
    Apr. 14, 2020) ................................................................................................................ 15

*IT Corp. v. General Am. Life Ins. Co.*,
    107 F.3d 1415 (9th Cir. 1997) ...................................................................................... 32

*King v. Blue Cross & Blue Shield of Ill.*,
    871 F.3d 730 (9th Cir. 2017) ........................................................................................ 33

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) .................................................................................................. 23

*Laura B. v. United Health Grp. Co.*,
    2017 WL 3670782 (N.D. Cal. Aug. 25, 2017) .............................................................. 29

*LD v. United Behav. Health*,
    508 F. Supp. 3d 583 (N.D. Cal. 2020) .......................................................................... 30

*Levit v. Nature's Bakery, LLC*,
    767 F. Supp. 3d 955 (N.D. Cal. 2025) .......................................................................... 25

*Mejia v. Credence Mgmt. Sols.*,
    782 F. Supp. 3d 884 (C.D. Cal. 2025) .......................................................................... 32

*Methodist Hosp. v. Blue Cross*,
    2011 WL 13186107 (C.D. Cal. 2011).......................................................................... 29

*Mod. Dev. Co. v. Navigators Ins. Co.*,
    111 Cal. App. 4th 932 (Cal. Ct. App. 2003) ................................................................ 18

*Moore v. Centrelake Med. Grp., Inc.*,
    83 Cal. App. 5th 515 (Cal. Ct. App. 2022) .................................................................. 23

*Moyle v. Liberty Mut. Ret. Benefit Plan*,
    823 F.3d 948 (9th Cir. 2016) ........................................................................................ 35

*Nacarino v. Chobani, LLC*,
    668 F. Supp. 3d 881 (N.D. Cal. 2023) .......................................................................... 24

*Norris v. Mazzola*,
    231 F. Supp. 3d 412 (N.D. Cal. 2017) .......................................................................... 30

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
    112 Cal. App. 5th 519 (Cal. Ct. App. 2025) ........................................................... 15, 16

*Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc.*,
    12 Cal. App. 5th 200 (Cal. Ct. App. 2017) .................................................................... 9

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009) ...................................................................................... 34

*Pemberton v. Nationstar Mortg. LLC*,
    331 F. Supp. 3d 1018 (S.D. Cal. 2018).......................................................................... 20

*Phillips v. Noetic Specialty Ins. Co.*,
  919 F. Supp. 2d 1089 (S.D. Cal. 2013)...................................................................... 19

*Plascencia v. Lending 1st Mortg.*,
  583 F. Supp. 2d 1090 (N.D. Cal. 2008) ..................................................................... 23

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) ............................................................................................... 25

*Ryan S. v. UnitedHealth Grp., Inc.*,
  98 F.4th 965 (9th Cir. 2024) .......................................................................... 35, 36, 37

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
  770 F.3d 1282 (9th Cir. 2014) ............................................................................. 29, 30

*Stasi v. Inmediata Health Grp. Corp.*,
  501 F. Supp. 3d 898 (S.D. Cal. 2020)........................................................................ 16

*The Meadows v. Emps. Health Ins.*,
  47 F.3d 1006 (9th Cir. 1995) ..................................................................................... 27

*United States v. United Healthcare Ins. Co.*,
  832 F.3d 1084 (9th Cir. 2016) ................................................................................... 22

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996).................................................................................................... 35

*Warmenhoven v. NetApp, Inc.*,
  13 F.4th 717 (9th Cir. 2021) ...................................................................................... 33

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ..................................................................................... 20

*Wilson v. Centene Mgmt. Co., L.L.C.*,
  168 F.4th 217 (5th Cir. 2026) .............................................................................. 10, 12

*Zigas v. Superior Ct.*,
  120 Cal. App. 3d 827 (Cal. Ct. App. 1981) ............................................................... 13

*Zisk v. Gannett Co. Income Prot. Plan*,
  73 F. Supp. 3d 1115 (N.D. Cal. 2014) ....................................................................... 35

**Statutes**

29 C.F.R. § 2590.712(c)(4)(ii) ........................................................................................ 32

29 C.F.R. § 2590.712(c)(4)(iii)(B)................................................................................... 32

29 U.S.C. § 1104(a)(1)..................................................................................................... 29

29 U.S.C. § 1132(a)(1)(B) .................................................................................... 1, 27, 31

29 U.S.C. § 1132(a)(3)............................................................................................... 1, 31

29 U.S.C. § 1144(a) ......................................................................................................... 24

29 U.S.C. § 1185(a)(3)(A)(ii) .......................................................................................... 32

29 U.S.C. § 1185a............................................................................................................... 2

42 U.S.C. § 300gg-26 ........................................................................................................ 2

Cal. Civ. Code § 1559 ................................................................................................. 12

California Health & Safety Code § 1367.03 ................................................................ 21

California Health & Safety Code § 1367.27 ................................................................ 21

Employee Retirement Income Security Act of 1974 ..................................................... 1

Mental Health Parity and Addiction Equity Act ........................................................... 2

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS | Case NO. 3:25-cv-09978-WHO

Plaintiffs Jenniffer Roiz, Claudine Castillo, Candyce Marto, and Kevin Maedel (together, "Plaintiffs"), respectfully submit this memorandum of law in opposition to Defendant Blue Shield's and Defendant Magellan's motions ("BS Mot." and "Mag. Mot.," respectively) to dismiss the First Amendment Complaint ("FAC").

## PRELIMINARY STATEMENT

This case is about a health insurer and its mental health administrator lying about the size of their mental health provider network to attract customers, boost profits, and avoid the costs of complying with network adequacy laws. Blue Shield and Magellan promised Plaintiffs access to a robust network of available, in-network mental health providers. That promise—made in plan documents, marketing materials, and the provider directory that Defendants repeatedly instructed Plaintiffs to use—was a lie. Approximately 80–95% of providers Defendants listed as in-network and accepting new patients were actually out of network, no longer practicing, not accepting new patients, and/or unavailable to provide the listed services. By overstating the size and adequacy of their mental health provider network, Defendants lured consumers (including Plaintiffs) into Blue Shield plans under false pretenses, charged premiums for illusory benefits, and avoided the cost of furnishing the in-network care they promised. Plaintiffs suffered the predictable consequences, including paying inflated premiums, incurring out-of-network costs, delaying treatment, and, in some cases, completely foregoing urgently needed mental health care.

Plaintiffs brought this case to hold Defendants accountable for their violations of contractual, statutory, and common-law duties. All Plaintiffs assert claims for (1) violation of California's Unfair Competition Law ("UCL"); (2) intentional misrepresentation; (3) negligent misrepresentation; and (4) restitution for unjust enrichment. Castillo, Marto, and Maedel assert additional claims for (1) breach of contract and (2) breach of the covenant of good faith and fair dealing. Roiz, whose plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), asserts additional claims under ERISA for (1) denial of benefits in violation of 29 U.S.C. § 1132(a)(1)(B); (2) breach of fiduciary duty in violation of 29 U.S.C. § 1132(a)(3); and (3) violation of the Mental Health Parity and Addiction Equity Act ("MHPAEA"), 29 U.S.C. § 1185a, 42 U.S.C. § 300gg-26.

Defendants move to dismiss all of these claims. None of their arguments for dismissal withstand scrutiny.

*First*, contrary to Blue Shield's contention, the FAC identifies the specific contract terms that Blue Shield breached and the damages Plaintiffs suffered as a result. It alleges that, in its contracts with Plaintiffs, Blue Shield promised (i) a provider directory that accurately reflected the provider network and (ii) timely, geographically accessible, in-network care. The FAC further alleges that Blue Shield breached those promises and caused damages, including inflated premiums, out-of-network expenses, and delayed and foregone care.

*Second*, Plaintiffs have standing as third-party beneficiaries to bring claims for breach of Blue Shield's contracts with Plaintiffs' employers and Magellan's contract with Blue Shield. The express purpose of those contracts is to provide healthcare benefits to Blue Shield members, including Plaintiffs. Permitting Plaintiffs to enforce those obligations is consistent with the contracts' purpose and structure, as insureds are the ones harmed when Defendants fail to perform.

*Third*, the implied-covenant claims are not duplicative of the contract claims. Defendants did more than just breach their contracts; they frustrated Plaintiffs' ability to utilize their plan benefits by intentionally delivering incompetent and inconvenient customer service when Plaintiffs could not find in-network care.

*Fourth*, the FAC states a claim under all three prongs of the UCL: *unlawful* conduct based on violations of federal and California law governing directory accuracy, network adequacy, and parity in mental health coverage; *unfair* conduct based on misrepresentations of the provider network; and *fraudulent* conduct based on publishing a provider directory that would mislead any reasonable consumer into believing that Defendants' network was far larger than it actually was. The FAC identifies Defendants' false statements, where they appeared, who made them, when they were made, and why they were false. The FAC also alleges economic injury through inflated premiums and out-of-network costs, and Plaintiffs have standing to seek injunctive relief because they cannot rely on Defendants' directory going forward.

*Fifth*, Plaintiffs plead intentional and negligent misrepresentation with particularity and justifiable reliance. The economic loss doctrine does not bar these claims because misrepresentations were made outside the contract and before Plaintiffs' enrollment.

*Sixth*, Plaintiffs have stated a restitution claim against Magellan on an unjust enrichment theory. Although Magellan was indirectly enriched as a result of its misconduct, restitution does not require Plaintiffs to have paid Magellan directly. Moreover, a claim for restitution is properly pled in the alternative to breach of contract where, as here, the underlying contract might be deemed unenforceable by the Plaintiffs.

*Seventh*, ERISA does not preempt Roiz's state law claims because they stem from generally applicable duties and do not depend on the interpretation of an ERISA plan.

*Finally*, the FAC states claims under ERISA for denial of benefits, breach of fiduciary duty, and violation of the MHPAEA. As to the denial-of-benefits claim, Roiz's plan does not impose a mandatory grievance process that must be exhausted, and, regardless, the FAC pleads exhaustion. Further, the FAC identifies multiple plan provisions that entitle Roiz to benefits and alleges that Defendants failed to provide them, including a right to receive timely and geographically accessible mental health services. As to the breach-of-fiduciary-duty claim, it is not duplicative of the denial-of-benefits claim. The FAC alleges that Defendants breached duties of loyalty and care by lying about the plan terms, a distinct wrong for which Roiz seeks distinct relief. And the FAC adequately alleges that Magellan acted as a fiduciary by exercising discretion to interpret plan terms and maintain the provider directory. As to the MHPAEA claim, the FAC's allegations—that Blue Shield, with Magellan's assistance, applied significantly lower network adequacy and directory accuracy standards for mental health providers than for medical/surgical providers—are sufficient at the pleading stage, particularly when Blue Shield's records are not yet available to Plaintiffs.

In sum, Defendants' motions to dismiss should be denied in their entirety.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Plaintiffs plausibly allege that Blue Shield breached its contracts with Plaintiffs and caused them damages.

3

2. Whether Plaintiffs plausibly allege that they are third-party beneficiaries of Blue Shield's contracts with their employers.

3. Whether Plaintiffs plausibly allege that Blue Shield breached its contracts with Plaintiffs' employers and caused Plaintiffs damages.

4. Whether Plaintiffs plausibly allege that they are third-party beneficiaries of Magellan's contract with Blue Shield.

5. Whether Plaintiffs plausibly allege that Magellan breached its contract with Blue Shield and caused Plaintiffs damages.

6. Whether Plaintiffs plausibly allege that Defendants breached the implied covenant of good faith and fair dealing by denying Plaintiffs the benefits of their Blue Shield plans.

7. Whether Plaintiffs plausibly allege that Defendants violated the UCL by: (i) violating federal and state laws mandating directory accuracy, network adequacy, and mental health parity; (ii) unfairly charging inflated premiums for plans lacking the promised robust network; and (iii) fraudulently misrepresenting the provider network, causing Plaintiffs financial harm.

8. Whether Plaintiffs state claims for intentional and negligent misrepresentation by alleging that Defendants induced Plaintiffs to enroll in Blue Shield plans by misrepresenting the mental health provider network.

9. Whether Plaintiffs state a claim for restitution for unjust enrichment by alleging that Defendants' inaccurate directory caused Plaintiffs to enroll in Blue Shield plans and pay inflated premiums for an illusory network, thereby enriching Defendants.

10. Whether Roiz plausibly alleges that Defendants failed to provide benefits due under her ERISA plan in violation of 29 U.S.C. § 1132(a)(1)(B).

11. Whether Roiz plausibly alleges that Defendants acted as fiduciaries and breached fiduciary duties in violation of 29 U.S.C. § 1132(a)(3).

12. Whether Roiz plausibly alleges that Blue Shield violated the MHPAEA by imposing more restrictive limitations to mental health benefits than to medical benefits, including with respect to network adequacy, directory accuracy, and access to in-network care.

4

**BACKGROUND**

This case arises from Defendants' scheme to misrepresent the size, quality, and accessibility of their mental health provider network in order to attract customers, appear compliant with network adequacy laws, and avoid the costs of covering in-network care. Blue Shield operates and administers the health insurance plans at issue while Magellan administers the mental health benefits for those plans as Blue Shield's "Mental Health Service Administrator." FAC ¶ 122–23. Blue Shield shares with Magellan a portion of the premiums that Plaintiffs, and other insureds, pay. *Id.* ¶¶ 232–33, 381–89.

In contract documents and marketing materials, Blue Shield and Magellan promised those who enrolled in their health insurance plans access to the vast network of mental health providers listed in their online provider directory.[1] *Id.* ¶¶ 141–145, 173–181, 184–196, 220–221. Blue Shield even urged prospective enrollees to "review the list of providers [in the] directory before enrolling," as it would reveal "a wide range of doctors, specialists, and hospitals to help you … wherever you live or work." *Id.* ¶¶ 196, 257; *see also id.* (calling its network "among the largest in California"). In reality, Defendants' mental health provider network was virtually non-existent. The directory was filled almost exclusively with false listings—providers whom the directory represented as being in network, accepting new patients, practicing at the listed location, qualified to provide the listed services, and otherwise available to treat members, but who in fact were not. *Id.* ¶¶ 141–50, 182, 227, 160–71.

These misrepresentations violated Defendants' statutory, contractual, and common law obligations. It is undisputed that federal and California law, as well as the contracts governing Defendants' health insurance plans, require Defendants to: maintain a provider network large enough to ensure that plan members have timely access to geographically accessible, in-network mental health care; publish an accurate provider directory; regularly verify and update provider information; and remove unverified providers. *Id.* ¶¶ 26–42, 184–93, 200–05, 253–62, 272–78, 282–91. Rather than spend the money to comply with those obligations, Defendants instead built

---

[1] Both Blue Shield and Magellan published the provider directory on their websites as well as in hard copy. *Id.* ¶ 141.

a sham network in which over 80% of the providers were falsely listed in the directory. *Id*. ¶¶ 160–71.

Plaintiffs are four individuals who enrolled in a Blue Shield plan based on Defendants' promises regarding their mental health provider network. *Id*. ¶¶ 52–54, 72–74, 94–100, 109–12, 220–221. Once enrolled, Plaintiffs searched for care using the provider directory, which their health insurance contracts identified as the definitive source of reliable information about the providers in Defendants' network. *Id*. ¶¶ 149, 186–87, 190–92, 254.

Jennifer Roiz, who had recently experienced two miscarriages, searched the directory for female therapists who specialized in grief and were accepting new patients, then called ten listed providers. *Id*. ¶¶ 59–60. Contrary to the directory's representations, every one of them was either out of network, unavailable to treat her, or did not offer the listed services. *Id*. Claudine Castillo, Candyce Marto, and Kevin Maedel had similar experiences. Each of them reviewed lists of providers who supposedly were in network and accepting new patients, but when they called the listed providers, they turned out to be out of network, unavailable, or unable to provide the services listed for them. *Id*. ¶¶ 76–77, 82–84, 101–02, 113, 116–19. When Plaintiffs reported these problems and requested help, Defendants simply directed them back to the inaccurate directory instead of providing actual access to care, as Defendants were statutorily and contractually required to do. *Id*. ¶¶ 32–36, 61–62, 85–87, 200–04.

Plaintiffs' experiences were not aberrational. Secret shopper studies confirmed that Defendants' directory dramatically overstated the breadth and availability of their mental health provider network. In February and March 2026, research consultants replicated the same kinds of searches Plaintiffs had performed by using Defendants' online directory to identify mental health providers whom the directory represented were in network and accepting new patients in the relevant geographic areas, then calling those providers to verify network status, availability, and services offered. *Id*. ¶¶ 160–63, 166, 169. These studies found that 80–95% of the providers were falsely listed. *Id*. ¶¶ 164–65, 168, 171.

Plaintiffs were harmed in several ways. First, they paid inflated premiums for plans that purported to include robust mental health care and access to a broad provider network, when those

6

benefits were largely illusory. *Id*. ¶¶ 5, 213, 232, 235–36, 238, 265. Second, because the providers Defendants represented as in network and available were often not, Plaintiffs were forced to pay for out-of-network care. *Id*. ¶¶ 5, 63, 236, 265. Third, Plaintiffs delayed and even forewent urgently needed mental health treatment because Defendants' inaccurate directory sent them on a fruitless search for unavailable care. *Id*. ¶¶ 8, 77, 89, 103, 118, 236, 265. These harms were the foreseeable and intended result of Defendants' scheme to sell health insurance under false pretenses while avoiding the costs of providing the promised access to care. *Id*. ¶¶ 4, 229–38.

## LEGAL STANDARD

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016). To survive a motion to dismiss, "detailed factual allegations" are not required. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must simply contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the truth of the allegations]." *Twombly*, 550 U.S. at 556.

## ARGUMENT[2]

Defendants move to dismiss the FAC on the following grounds: failure to allege the necessary elements of each claim; lack of standing to bring third-party-beneficiary claims; failure to plead fraud with particularity; ERISA preemption; and failure to exhaust administrative remedies. As explained below, these arguments are meritless.

---

[2] All case citations herein omit internal citations and quotation marks unless otherwise noted.

## I. PLAINTIFFS STATE TWO CLAIMS FOR BREACH OF CONTRACT AGAINST BLUE SHIELD (COUNTS 1 AND 2)

The Plaintiffs who enrolled in non-ERISA plans (Castillo, Marto, and Maedel) assert two separate breach-of-contract claims against Blue Shield: Count One based on Plaintiffs' own contracts with Blue Shield; and Count Two based on the contracts between Plaintiffs' employers and Blue Shield, of which Plaintiffs are third-party beneficiaries.[3]  We address each claim in turn.

### A. Count One – Plaintiffs' Contracts with Blue Shield

To state a claim for breach of contract in California, a plaintiff must plead "(1) the existence of a contract, (2) performance or excuse for nonperformance, (3) defendant's breach, and (4) damages." *Genomics v. Song*, 709 F. Supp. 3d 847, 854 (N.D. Cal. 2023).  With respect to Count One, Blue Shield seeks dismissal based on the third and fourth elements.  Specifically, it argues that the FAC fails to allege (i) a breach of any contractual term and (ii) damages resulting from such breach.  BS Mot. at 17–19.  Both arguments are incorrect.

#### 1. The FAC adequately alleges multiple breaches

The FAC identifies several contract terms that Blue Shield breached.  These terms can be divided into two categories.

The first category relates to Blue Shield's provider directory.  The "Evidence of Coverage" contract documents state that Plaintiffs can go to Blue Shield's online directory to obtain a current list of in-network providers ("Participating Providers") available to treat them.[4]  Specifically, the contracts state: "Visit blueshieldca.com or use the Blue Shield mobile app and click on Find a Doctor for a list of your plan's Participating Providers"; "You can find Participating Providers in this network at blueshieldca.com"; and "Visit blueshieldca.com and click on Find a Doctor to

---

[3] The breach-of-contract claims are not brought on behalf of the lone Plaintiff enrolled in an ERISA plan (Roiz) because ERISA preempts contract-based claims.

[4] Blue Shield does not dispute that it has a direct contractual relationship with Plaintiffs and that the Evidence of Coverage documents are part of the contractual agreement.  The documents themselves state that they are "part of the contractual agreement between the Subscriber and Blue Shield." *See, e.g.*, Dkt. No. 42-3 at 75. *See also Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 205 n.2 (Cal. Ct. App. 2017) ("An evidence of coverage is a contract between a health plan and a subscriber….").

8

access the MHSA network." FAC ¶¶ 149, 186–87, 254. Moreover, Blue Shield guarantees that it will "validate information in its directory at least once every 90 days" and promises that "[i]f a provider leaves this plan's network, the status of the provider will change from Participating to Non-Participating." *Id*. ¶¶ 190–92. The contracts further state that Plaintiffs "have the right to … information about … [the] Health Care Providers available to care for you." *See, e.g.*, Dkt. No. 42-3 at 15; *see also* FAC ¶ 252.

The FAC alleges that Blue Shield has breached these contractual provisions by publishing an inaccurate directory that greatly exaggerates the provider network. *Id*. ¶¶ 252–63. Blue Shield not only fails to regularly update its directory, it affirmatively lies about providers in order to create the appearance of a robust network. *Id*. ¶¶ 37, 144, 147, 223. According to secret shopper studies and Plaintiffs' own experiences, over 80% of the providers listed in the directory as being in network and available to see new patients are actually out of network, no longer practicing, unavailable to see new patients, and/or not providing the services listed. *See id*. ¶¶ 59–60, 65, 76–77, 82–89, 101–02, 113, 116–19, 145, 160–71. In short, contrary to Blue Shield's contractual representations, Plaintiffs cannot rely on the directory to find in-network care or accurate information. *See Duff v. Centene Corp.*, 565 F. Supp. 3d 1004, 1019–20 (S.D. Ohio 2021) (plaintiffs plausibly alleged breach of contract where insurer published inaccurate online directory despite promising "a current list of network providers"); *Harvey v. Centene Mgmt. Co. LLC*, 357 F. Supp. 3d 1073, 1085 (E.D. Wash. 2018) (same) (*see* FAC ¶ 69); *Angelo v. Centene Mgmt. Co., LLC*, 2021 WL 352434, at *3 (W.D. Tex. Feb. 2, 2021), *report and recommendation adopted*, 2021 WL 8083340 (W.D. Tex. Feb. 25, 2021) (inaccurate directory plausibly breached contract provision stating: "To search our online Provider Directory, visit Ambetter.SuperiorHealthPlan.com/findadoc and use our Find a Provider tool. This tool will have the most up-to-date information about our provider network …." (Dkt. No. 19 ¶ 59)); *Wilson v. Centene Mgmt. Co., L.L.C.*, 168 F.4th 217, 228 (5th Cir. 2026) (endorsing *Angelo* plaintiffs' breach-of-contract theory); *Desai v. CareSource Inc.*, 250 N.E.3d 689, 695–96 (Ohio Ct. App. 2d Dist. Montg. Cnty. 2024) (inaccurate directory would breach contract provision stating that "insured may identify [in-network] provider[s] … by logging onto our website").

9

The second category of contractual breaches relates to access to care. Plaintiffs' contracts require Blue Shield to facilitate timely, geographically accessible care at in-network rates, stating:

- "You have a right to receive timely and geographically accessible Mental Health/Substance Use Disorder (MH/SUD) services when you need them. If Blue Shield fails to arrange those services for you with an appropriate provider who is in the health plan's network, the health plan must cover and arrange needed services for you from an out-of-network provider. If that happens, you do not have to pay anything other than your ordinary in-network cost-sharing." FAC ¶ 202.

- "[Blue Shield's Mental Health Service Administrator] will help you either schedule an appointment with a Participating Provider, or select a Non-Participating Provider in your area within five calendar days and contact you regarding available appointment times. For any Covered Services, you will be responsible for no more than the Cost Share for seeing a Non-Participating Provider." *Id.* ¶ 201.

- "[Y]our health plan must offer an appointment for you that is no more than 10 business days from when you requested the services from the health plan. If you urgently need the services, your health plan must offer you an appointment within 48 hours of your request (if the health plan does not require prior authorization for the appointment) or within 96 hours (if the health plan does require prior authorization)." *Id.* ¶ 203.

- "[W]hen you call for an appointment, you will see your provider within a reasonable timeframe." *Id.* ¶ 204.

- "[Y]ou have the right to … reasonable access to appropriate medical and mental health services." *See, e.g.*, Dkt. No. 42-3 at 15.

The FAC alleges that Blue Shield breached these promises by failing to arrange for timely, geographically accessible care at in-network rates, even when repeatedly asked to do so. *See, e.g.*, FAC ¶¶ 76–77, 82–87, 264, 342, 344. The most Blue Shield did was refer one Plaintiff (Castillo) to Magellan when her son was suicidal; Magellan refused to do anything but point her to the provider directory, which she told them was inaccurate. *Id.* ¶¶ 82–88. Courts routinely uphold breach-of-contract claims in these circumstances. *See, e.g.*, *Duff*, 565 F. Supp. 3d at 1020 (insurer failed to provide contractually required "adequate access" to providers); *Harvey*, 357 F. Supp. 3d at 1085 (same) (*see* FAC at ¶ 69); *Angelo*, 2021 WL 352434, at *3 (same).

10

### 2.    The FAC adequately pleads damages

Contrary to Blue Shield's contention, the FAC clearly identifies the ways in which Plaintiffs were damaged by Blue Shield's contractual breaches.  First, an insurance plan's "dollar value" is tied to the size of its provider network, so "[b]y furnishing a provider network that was drastically smaller than what [it] promised, [Blue Shield] overcharged Plaintiffs for their health insurance coverage."  FAC ¶ 213; *see also id*. ¶¶ 232, 235–38, 265 (explaining how Plaintiffs paid inflated premiums).  Second, Blue Shield made it nearly impossible for Plaintiffs to find in-network care or receive coverage for out-of-network care at in-network cost-sharing levels, so they were forced to "incur significant out-of-pocket expenses for out-of-network provider payments." *Id*. ¶ 265; *see also id*. ¶¶ 5, 236.  Third, Plaintiffs were forced to delay, and even forgo, treatment for time-sensitive mental health problems because the directory and Blue Shield staff would not help them find nearby, in-network care.  *Id*. ¶¶ 236, 265.  These are all cognizable damages that flow from the alleged contractual breaches.  *See Harvey*, 357 F. Supp. 3d at 1086 (approving identical damages theories and explaining that plaintiffs "need not allege precise figures of premiums paid and out-of-pocket expenses incurred for [defendant] to receive fair notice of … damages"); *Duff*, 565 F. Supp. 3d at 1020 (same); *Wilson*, 168 F.4th at 229 (plaintiffs adequately alleged overcharged premium damages caused by defendant's inaccurate directory).

### B.    Count Two – Contracts Between Plaintiffs' Employers and Blue Shield

Blue Shield contracts with Plaintiffs' employers to provide health insurance to Plaintiffs, their coworkers, and their dependents.  FAC ¶ 267.  By maintaining an inaccurate directory and inadequate network, Blue Shield also breached these contracts, which Plaintiffs can enforce as third-party beneficiaries.

### 1.    Plaintiffs have standing as third-party beneficiaries

Blue Shield argues that Plaintiffs lack standing to enforce the contracts between their employers and Blue Shield.  BS Mot. at 20.  That is incorrect.

Under Cal. Civ. Code § 1559, "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  A third party may enforce a contract if "(1) the third party would in fact benefit from the contract; (2) a motivating

11

purpose of the contracting parties was to provide a benefit to the third party; and (3) permitting the third party to enforce the contract is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Durkin v. Mercedes-Benz USA LLC*, 2025 WL 2263681, at *2 (N.D. Cal. July 15, 2025) (cleaned up).  Plaintiffs satisfy all three prongs.

*First*, it is self-evident that Plaintiffs benefit from the contracts at issue: they receive the health insurance coverage that Blue Shield is obligated to administer.  FAC ¶¶ 267–70.

*Second*, the purpose of the contracts is to benefit Plaintiffs (and other covered employees). *Id*.  Indeed, the contracts state that "Blue Shield agrees to provide Benefits of this Contract to covered Employees and their covered Dependents."  Cohen Decl., Ex. 1 at 3; *see also id*. at 14.

*Third*, permitting Plaintiffs to bring a breach-of-contract action is entirely consistent with the contracts' objectives and structure, which assigns Blue Shield obligations that run exclusively to the employees and which the employers have no practical ability or motivation to monitor or enforce.  *See* FAC ¶ 271; *see also Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 831 (Cal. 2019) (operative question is whether "third party enforcement will effectuate the contracting parties' performance objectives").  If Blue Shield fails to perform, it is the employees, not the employers, who suffer.  *See Zigas v. Superior Ct.*, 120 Cal. App. 3d 827, 837–38 (Cal. Ct. App. 1981) (allowing third parties to enforce government contract because they suffered direct harm).  In addition, the contracts speak directly to the employees, referring to them as "you" throughout the Evidence of Coverage section and advising them of "Your bill of rights."  Cohen Decl., Ex. 1 at 29–172.  Finally, had the contracting parties wanted to disclaim employees' third-party beneficiary status, they knew how to say so, yet chose not to: the contracts state that they do "not create a third-party beneficiary or other legal relationship between Blue Shield and … *Provider[s]*," but contain no similar disclaimer for *employees*.  *Id*. at 113 (emphasis added).

*Baglione v. Health Net of California, Inc*., 97 Cal. App. 5th 882 (Cal. Ct. App. 2023), is instructive.  There, California's Court of Appeal held that a county employee could enforce a group health insurance contract between the county and the insurer because "an employer's agreement with a health plan is negotiated primarily for the benefit of the employees."  *Id*. at 892.  Other cases have reached the same conclusion.  *See, e.g.*, *Bass v. John Hancock Mut. Life Ins. Co.*, 10

12

Cal. 3d 792, 798 n.4 (Cal. 1974); *Harper v. Wausau Ins. Co.*, 56 Cal. App. 4th 1079, 1087–91 (Cal. Ct. App. 1997) (allowing third-party enforcement and collecting cases).

### 2. The FAC adequately alleges breaches and damages

As with Count One, Blue Shield erroneously argues that Count Two fails to allege (i) a breach of any contractual term and (ii) damages resulting from such breach.  BS Mot. at 17–20.

The alleged breaches are crystal clear.  The contracts require Blue Shield to comply with "applicable state and federal statutes and regulations" when providing services to covered employees.  FAC ¶ 272 (quoting the contracts).  Blue Shield breached this provision by maintaining an inaccurate provider directory and inadequate mental health provider network, both of which violate state and federal law (as Blue Shield does not dispute).  *See id*. ¶¶ 59–61, 76–77, 82–89, 101–03, 113–19, 141–48, 160–71 (detailing the directory inaccuracies and network inadequacies); 26–36, 272–78 (discussing the state and federal laws mandating directory accuracy and network adequacy and explaining how Blue Shield violated these laws).

The alleged damages are similarly straightforward.  Counts One and Two allege the same damages because they involve the same misconduct: lying about an inadequate provider network.  For the reasons stated above regarding Count One, the damages asserted are all cognizable.

## II. PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT AGAINST MAGELLAN (COUNT 3)

The non-ERISA Plaintiffs also assert a breach of contract claim against Magellan.  It is based on the Magellan-Blue Shield contract, of which Plaintiffs are third-party beneficiaries.

### A. Plaintiffs Have Standing as Third-Party Beneficiaries

Magellan argues that Plaintiffs cannot enforce its contract with Blue Shield because the contract contains a boilerplate third-party-beneficiary disclaimer and was intended to benefit Blue Shield.  Mag. Mot. at 8; Mag. Ex. 1 (Dkt. No. 52-2) at 8.  But under California law, such disclaimers are not dispositive; the "parties' intent ha[s] to be analyzed on a case-by-case basis." *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 112 Cal. App. 5th 519, 564 (Cal. Ct. App. 2025), *review denied* (Sept. 17, 2025).  Where, as here, "the [contract] language" demonstrates that it "was entered into for the benefit of" non-signatories, they are third-party

13

beneficiaries. *Id.* (subtenant was third-party beneficiary, despite disclaimer, because contract "expressly referred" to subtenant, which "was specifically formed to build" project contemplated by contract).

*First*, the contract refers to "Members" and "Enrollees" on nearly every page and states that Defendants "desire that [Magellan] provide or arrange for the delivery of mental health … services, to Members." Mag. Ex. 1 at 2–3, 5–7, 9, 11.[5] Thus, it is self-evident that Plaintiffs benefit from the contract and that the contract's purpose is to benefit Plaintiffs. Moreover, the Magellan-Blue Shield contract's "boilerplate" disclaimer is not dispositive because it does not "expressly prohibit third-party beneficiary status" to Members. *Inland Nw. Renal Care Grp., LLC v. WebTPA Emp. Servs., LLC*, 2020 WL 1866436 (W.D. Wash. Mar. 26, 2020), *report and recommendation adopted*, 2020 WL 1862607, at *7 (W.D. Wash. Apr. 14, 2020) (disclaimer did not prevent third-party enforcement when contract "contain[ed] specific language evidencing a clear intent" to benefit and mentioned non-signatory).

*Second*, permitting Plaintiffs to bring a breach-of-contract action is consistent with the contract's structure and "necessary to effectuate the objectives of the contract." *Goonewardene*, 6 Cal. 5th at 836. The contract provides that Magellan will "reimburse" certain Members directly for emergency services, who submit their claims directly to Magellan (Mag. Ex. 1 at 7), "necessarily inferring that the parties anticipated [Members] could sue for breach." *Oakland Bulk*, 112 Cal. App. 5th at 563. Further, if Magellan fails to perform its obligations, Members, not Blue Shield, will suffer. Blue Shield cannot be solely entrusted to enforce the contract. After all, it *benefits* if Magellan breaches its contractual obligations because Blue Shield's costs decrease when Members cannot access in-network care. *Contra Goonewardene*, 6 Cal. 5th at 836 ("no need

---

[5] Magellan did not submit the complete contract. Magellan's exhibit contains seven pages from a 95-page contract and an addendum. Blue Shield's Request for Judicial Notice (Dkt. No. 42) shows that Magellan has additional contractual obligations not included in Magellan's exhibit that directly benefit insureds, including that Magellan "authorize[s] services, process[es] claims, and address[es] complaints and grievances for those [mental health] Benefits;" approves prior authorization; helps insureds find in-network care; and approves outpatient behavioral health treatment plans. Dkt. No. 42-1 at 27, 68–69; Dkt. No. 42-2 at 27, 68–69; Dkt. No. 42-3 at 19, 59–60; Dkt. No. 42-4 at 19, 59–60; Dkt. No. 42-7 at 18, 54; Dkt. No. 42-8 at 17, 57–58; Dkt. No. 42-9 at 18, 58; Dkt. No 42-10 at 18, 60–61.

to permit" third-party beneficiary claim because contracting party "is available and fully capable of pursuing a breach of contract" claim).

### B.     The FAC Adequately Alleges Multiple Breaches and Causation

Magellan argues that the FAC fails to identify (i) any "specific provision" it breached or (ii) how any such breach caused Plaintiffs' injuries.  Mag. Mot. at 9–10.  The FAC does both.

*First*, the FAC states that the contract requires Magellan to "comply with all applicable state and federal statutes and regulations," including those that require Magellan to "verify and update [its] provider directories" at least "every 90 days."[6] FAC ¶¶ 286, 289.  The Magellan-Blue Shield contract indeed requires Magellan to provide a network that satisfies "the access standards established by applicable state and federal law;" to "publish and maintain a provider directory" that complies with California law; to "investigate and undertake corrective action" to "ensure the accuracy of the directory[]" as "required by federal law or regulations;" and to "ensure the accuracy of provider directory information" as "required by federal law."  Mag. Ex. 1 at 6, 9–11.  Magellan argues that its alleged failure to correct directory inaccuracies to which Castillo alerted it does not mean it "failed to follow these contractual procedures."  Mag. Mot. at 10.  But had Magellan "investigate[d] and undert[ook] corrective action within thirty [days] to ensure the accuracy of the directory[]" after being "informed of a possible inaccuracy" (Mag. Ex. 1 at 10), Magellan would not have continued to list those providers "as available."  FAC ¶ 88.

*Second*, the FAC plausibly alleges causation.  The FAC alleges that, because of Magellan's breaches, Plaintiffs (i) paid inflated premiums for a provider network and mental health benefits that were worse than promised, (ii) were forced to pay for out-of-network care, and (iii) had to delay and/or forego care.  FAC ¶ 292.  Magellan argues that Castillo does not allege how Magellan's failure to update its provider directory harmed her (Mag. Mot. at 10), but the FAC

---

[6] Plaintiffs did not have access to Magellan's contract with Blue Shield until Magellan submitted an excerpt of the contract as an exhibit.  Even if Magellan had not provided an excerpt, which confirms that it breached its contract, the FAC stated a claim for breach because it identified the existence of the Magellan-Blue Shield contract and the "substance of the relevant terms." *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 919–20 (S.D. Cal. 2020).

15

pleads that her son has foregone care because she has been unable to find in-network care for him through Magellan's inaccurate directory.  FAC ¶ 89.

## III.   PLAINTIFFS STATE CLAIMS FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNTS 4, 5, AND 6)

The non-ERISA Plaintiffs assert breach-of-the-implied-covenant claims against Blue Shield and Magellan.  Such a claim "requires the same elements as a claim for breach of contract, except the plaintiff must show that the defendant deprived the plaintiff of a benefit of the contract in violation of the parties' expectations."  *Etminan v. Alphatec Spine, Inc.*, 2024 WL 3941832, at *2 (S.D. Cal. Aug. 23, 2024).

### A.   The Claims for Breach of the Implied Covenant Are Not Duplicative

Blue Shield and Magellan argue that the implied-covenant claims duplicate the contract claims.  *See* BS Mot. at 20–21; Mag. Mot. at 9 n.3.  Not so.

An implied covenant claim is not duplicative "when a plaintiff alleges that the defendant acted in bad faith to frustrate the benefits of the alleged contract."  *Davis v. Capitol Recs., LLC*, 2013 WL 1701746, at *4 (N.D. Cal. Apr. 18, 2013) (implied covenant claim not duplicative of breach of contract claim for failure to pay royalties when implied covenant claim alleged that defendant falsely reported digital download licenses to earn higher profits); *see also Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 853 (C.D. Cal. 2004) (implied covenant and breach of contract claims "will always be based on the same facts" and "seek the same remedy").  That is exactly what Plaintiffs allege.  The FAC pleads that Blue Shield and Magellan "purposely" made the "customer service line difficult to access" and "fail[ed] to train and supervise customer service representatives," resulting in representatives "falsely informing Plaintiffs that they had no recourse but to select a provider from the inaccurate directory," and that Blue Shield "obscur[ed] that Plaintiffs have the contractual right to use an out-of-network provider at an in-network cost when no in-network provider is available."  FAC ¶¶ 297, 300, 308, 311, 317, 320.  These allegations "go beyond what was alleged in the breach of contract claims[s]."  *Etminan*, 2024 WL 3941832, at *2.

### B.   Defendants' Remaining Arguments Are Meritless

Defendants' remaining arguments are easily dispatched.

16

*First*, Blue Shield argues that "Plaintiffs fail to allege any denial of benefits," so they cannot maintain an implied covenant claim.  BS Mot. at 20–21.  Blue Shield overstates California law.  In the insurance context, a plaintiff can bring an implied covenant claim against an insurer when the insurer has a duty to provide the benefits due under the plan.  *See Mod. Dev. Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932, 943 (Cal. Ct. App. 2003).  Here, Blue Shield had a duty to provide Plaintiffs with an adequate mental health provider network and accurate provider directory.  *See* FAC ¶¶ 29, 31–38, 148–49, 200–04.

*Second*, Magellan argues that Plaintiffs fail to state an implied covenant claim because Plaintiffs are not third-party beneficiaries of the Magellan-Blue Shield contract.  Mag. Mot. at 7–8.  But, as explained above, Plaintiffs have sufficiently pleaded that they are third-party beneficiaries, so Plaintiffs may "enforce the implied covenant of good faith and fair dealing."  *Phillips v. Noetic Specialty Ins. Co.*, 919 F. Supp. 2d 1089, 1100 (S.D. Cal. 2013).

## IV.   PLAINTIFFS STATE A UCL CLAIM (COUNT 7)

The UCL prohibits unlawful, unfair and fraudulent conduct.  The FAC alleges all three.

### A.   Unlawful Conduct

As the FAC alleges, secret shopper studies and Plaintiffs' own experiences show that: (i) 80–95% of the mental health provider listings in Defendants' directory are false; and (ii) Defendants' actual provider network is insufficient to ensure timely, geographically accessible, in-network mental health care.  FAC ¶¶ 57–63, 76–89, 101–03, 113–19, 160–71.  Defendants thus violated directory accuracy and network adequacy mandates in the No Surprises Act, Affordable Care Act, Knox-Keene Act, and California insurance law.  *See id*. ¶¶ 27–36, 324–45.[7]  And, as discussed in more detail below in Section IX, Blue Shield—with Magellan's assistance—applied significantly lower network adequacy and directory accuracy standards to mental health providers,

---

[7] Defendants do not dispute that these laws obligate them to: (1) publish an accurate directory of in-network providers, update it quarterly, remove unverified providers, and correctly identify which providers accept new patients; (2) maintain a mental health provider network adequate in number and type to ensure services are accessible to members without unreasonable delay, located within a maximum 30-minute/15-mile travel radius; and (3) ensure appointments within 10 days of request, and offer out-of-network coverage at the same price as in-network coverage, if the latter is unavailable.  *See id*. (citing relevant statutory and regulatory provisions).

17

which violated the MHPAEA and California Health & Safety Code § 1374.72 by making it more difficult for Plaintiffs to access mental health services than medical/surgical services. *See id.* ¶¶ 33–34, 66–69, 90–92, 105–07, 276–77, 413–16.

### B.    Unfair Conduct

Consumer-oriented conduct that "is immoral, unethical, oppressive, unscrupulous or substantially injurious" is unfair. *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1051 (S.D. Cal. 2018). Defendants acted unfairly by creating the illusion of a robust mental health provider network and charging inflated premiums for plans that did not include such a network.

### C.    Fraudulent Conduct

Statements "likely to [] deceive" a reasonable consumer are actionable. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the motion to dismiss stage]." *Id.*

Defendants deceived consumers by publishing a provider directory—which Defendants urged consumers to rely on (FAC ¶ 196)—that grossly misrepresented the size, quality, and availability of their provider network. Indeed, 80–95% of the mental health providers listed in Defendants' directory were falsely represented as being in-network, available to treat new patients, and qualified to provide the services listed.[8] *Id.* ¶¶ 160–71. Both Defendants also falsely assured consumers that they regularly updated their directory. *Id.* ¶¶ 190–93. Not only did Defendants fail to regularly update their directory, they refused to make corrections after being informed of specific inaccuracies. *See, e.g., id.* ¶¶ 88, 113, 116–17. These are all actionable misrepresentations, not puffery. *Cf. Doe v. Carelon Behav. Health, Inc.*, 2026 WL 880639, at *13 (S.D.N.Y. Mar. 31, 2026) ("misrepresentations about the size, breadth, and accuracy of [a] provider directory" constitute deceptive practices).

---

[8] Defendants also broadly exaggerated their provider network. *See, e.g., id.* ¶¶ 177 (promising access to "[a] full selection of behavioral health providers for mental health care"); 179 ("[W]e offer access to a wide range of doctors, specialists, and hospitals to help you find care wherever you live or work. Our … networks are among the largest in California."); 180 ("[N]o matter what level of behavioral health care you need, you have inpatient and outpatient options.").

18

**D.      Defendants' Rule 9(b) and Reliance Objections Fail**

Rule 9(b)'s heightened pleading requirement is inapplicable to UCL claims that do not sound in fraud. *See Epperson v. Gen. Motors, LLC*, 706 F. Supp. 3d 1031, 1040, 1042 (S.D. Cal. 2023). Here, Defendants: (1) maintained an inadequate mental health provider network; (2) failed to maintain an accurate, regularly updated directory; and (3) provided disparate treatment of mental health benefits. Rule 9(b) does not apply because each practice was unlawful *per se* without fraud or deceit.

Regardless, the FAC satisfies Rule 9(b). It identifies specific false statements by each Defendant regarding their mental health provider network and the accuracy of their provider directory; when such statements were made (prior to Plaintiffs' enrollment, during the enrollment process, and throughout Plaintiffs' enrollment); where they appear (in plan documents, marketing materials, the online and print directory, and Defendants' websites); and why they were false. *See* FAC ¶¶ 9, 52–54, 59–61, 65, 72–77, 83–85, 88–89, 95–102, 110–13, 116–19, 160–93. And Plaintiffs allege that Defendants: (i) must have known that their representations regarding the provider network were inaccurate given prior notice of the inaccuracies, the extent of the inaccuracies, and their obligation to regularly identify and eliminate inaccuracies (*see id*. ¶¶ 27, 42, 223–26, 228); and (ii) intentionally lied in order to attract customers, boost profits, and reduce costs (*see id*. ¶¶ 4–5, 144–46, 229, 362–64, 383–85). As to Magellan's argument that Roiz and Castillo fail to allege why Magellan's instruction to choose a provider from the directory was false, the FAC plainly refutes it. Mag. Mot. at 13. Castillo's plan requires that Defendants locate an available provider for urgent care, and Magellan did not tell Roiz that she could seek an out-of-network exception. FAC ¶¶ 87, 154.

Defendants take issue with the FAC referring, at times, to the collective action of "Defendants." BS Mot. at 24; Mag. Mot. at 13. However, "there is no flaw in a pleading [where] collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *United States v. United Healthcare Ins. Co.*, 832 F.3d 1084, 1102 (9th Cir. 2016). The FAC includes a detailed account of each Defendant's role in the misrepresentations, referring to them individually when alleging conduct by one entity alone

19

and to "Defendants" together when referring to their collective actions.

Defendants also argue lack of reliance. BS Mot at 26; Mag. Mot. at 13. But Plaintiffs need not allege reliance for non-fraud-based claims under the UCL's "unlawful" prong. *GiftCash Inc. v. Gap, Inc.*, 2023 WL 8006856, at *8 (N.D. Cal. Nov. 17, 2023) (Orrick, J.). Regardless, the FAC specifically alleges how each Plaintiff justifiably relied on Defendants' misrepresentations during enrollment and how Defendants invited such reliance.[9] *See* FAC ¶¶ 52–54, 72–74, 95–100, 110–112, 141–44, 196, 213–15, 220, 237, 359.

### E.    Plaintiffs Allege Economic Injury

Blue Shield erroneously argues that Plaintiffs fail to allege they lost money. *See* BS Mot. at 23. The FAC alleges that insurers charge higher premiums for more robust provider networks, but because Defendants did not in fact provide the robust network they advertised, Plaintiffs paid inflated premiums without receiving commensurate benefits and incurred unnecessary out-of-network costs. FAC ¶¶ 5, 213, 232, 235–38, 265. Plaintiffs need not allege the precise amount of price inflation, *i.e.*, "how much [they] would have paid … had [they] known [the coverage's] true market value," to sustain their claim. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013). Economic injury is alleged where, as here (FAC ¶¶ 231, 237), "the purchase would not have been made" (*i.e.*, Plaintiffs would not have enrolled in the plans) but for the misrepresentations, or that Plaintiffs did not receive "the benefit of the bargain." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 330 (2011); *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 527 (Cal. Ct. App. 2022).

### F.    Plaintiffs Allege Misconduct by Magellan

Magellan complains that the FAC does not identify unlawful or fraudulent conduct by Magellan. Mag. Mot. at 13–15. Not so. As a California-licensed specialized health care service plan, Magellan is subject to, and violated, the network adequacy and directory accuracy requirements of California Health & Safety Code §§ 1367.03 and 1367.27. FAC ¶¶ 122–24. It

---

[9] In addition, reliance may be "presumed" where, as here, "a reasonable person would attach importance" to the alleged misrepresentations. *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009). *See* FAC ¶¶ 213–15, 237.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS | Case NO. 3:25-cv-09978-WHO

directly engaged in unlawful, unfair, and deceptive practices by supplying and managing the inadequate mental health provider network; publishing an inaccurate directory; failing to regularly update the directory, despite claiming otherwise; directing insureds to use the inaccurate directory; and profiting from its misconduct. *Id*. ¶¶ 58, 61, 76–77, 82–88, 101–02, 113, 116–17, 121–24, 141–49, 181, 193, 232–33, 287–91, 383–85.[10]

### G. Plaintiffs Have Standing to Seek Injunctive Relief

Magellan challenges Plaintiffs' standing to seek injunctive relief. Mag. Mot. at 12. Injunctive relief is available under the UCL to "prevent[] future harm." *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009). Plaintiffs' inability to rely in the future on Defendants' directory is "sufficient to confer standing" for injunctive relief. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018); *see also Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 897–98 (N.D. Cal. 2023) (Orrick, J.) (plaintiff's inability to rely on defendant's statements in the future, although she would like to, establishes standing). Magellan's conclusory claim that no imminent threat of future harm exists (Mag. Mot. at 12) raises issues of proof, not pleading, and Magellan cannot satisfy its "formidable burden" to show "it is absolutely clear the allegedly wrongful behavior could not … recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167, 190 (2000).

### H. Plaintiffs Allege Grounds for Equitable Relief Against Magellan

Magellan alone argues that if Plaintiffs have an adequate remedy at law against Magellan, then equitable relief (restitution of inflated premiums and out-of-network expenses) is unavailable.[11] Mag. Mot. at 12. But at the pleading stage, Plaintiffs need not plead specific facts showing that legal remedies would be inadequate, and may pursue equitable relief in the

---

[10] Because Magellan knew the network and directory were faulty, and facilitated Blue Shield's separate unlawful conduct, it is also liable as an aider and abettor. *See Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008).

[11] Whether Plaintiffs have an adequate legal remedy against Blue Shield is irrelevant to whether they have an adequate legal remedy against *Magellan* because the adequacy inquiry is defendant-specific. *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 638–39 (N.D. Cal. 2020) (Orrick, J.) (rejecting one defendant's argument that plaintiffs had not shown inadequate remedies at law in case involving multiple defendants).

21

alternative, in the event that no legal remedy is available against Magellan. *Brown v. Van's Int'l Foods, Inc.*, 2022 WL 1471454, at *12–13 (N.D. Cal. 2022) (Orrick, J.).

## V.     PLAINTIFFS STATE CLAIMS FOR INTENTIONAL AND NEGLIGENT MISREPRESENTATION (COUNTS 8 AND 9)

Plaintiffs have adequately stated claims for intentional and negligent misrepresentation. Defendants argue that Plaintiffs fail to plead these claims with the particularity required by Rule 9(b) and that Plaintiffs fail to adequately allege justifiable reliance.[12]  These arguments are rebutted above. *See* Part IV.D, *supra*.

Blue Shield also argues that the economic loss doctrine bars Plaintiffs' misrepresentation claims. BS Mot. at 27–28. That is incorrect because Plaintiffs allege misrepresentations outside the contract and, accordingly, seek injunctive relief and damages for "harm above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); *see* FAC ¶¶ 7, 61, 115, 154–55, 174, 177, 179, 181, 207–08, 365, 377, 404. In addition, Defendants made misrepresentations to Plaintiffs and Class members when they were prospective enrollees, prior to even entering into a contract. *Id.* ¶¶ 52, 72, 95, 110, 141, 144.

## VI.    PLAINTIFFS STATE A CLAIM FOR RESTITUTION FOR UNJUST ENRICHMENT (COUNT 10)

Even when the parties' relationship is governed by a contract, plaintiffs may state a restitution claim for unjust enrichment in the alternative so long as they plead facts "suggesting that the contract may be unenforceable or invalid." *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 812 (N.D. Cal. 2022). As pled, Plaintiffs do not have a direct contractual relationship with Magellan, but rather seek to enforce the terms of Magellan's contract with Blue Shield as third-party beneficiaries. FAC ¶ 314. Because these facts raise uncertainty about

---

[12] "[A] growing trend of authority applies Rule 8, and not Rule 9(b), to a California law negligent misrepresentation claim." *Levit v. Nature's Bakery, LLC*, 767 F. Supp. 3d 955, 970 (N.D. Cal. 2025). But even if this Court declines to follow that trend, Plaintiffs' negligent misrepresentation claim satisfies Rule 9(b) for the reasons above.

whether Plaintiffs will ultimately be able to enforce the contract, an alternative unjust enrichment claim is proper with respect to Magellan.[13]

By lying about its inadequate provider network, Magellan induced Plaintiffs to enroll in Blue Shield plans, allowed Blue Shield to charge inflated premiums, and reduced costs, all of which boosted profits Blue Shield shared with Magellan. *Id*. ¶¶ 232–33, 381–89. That warrants restitution. Magellan's argument that it retained no benefit at Plaintiffs' expense (Mag. Mot. at 16–17) fails because California courts have long recognized that a benefit need not be directly conferred by a plaintiff on a defendant in order to give rise to a claim of unjust enrichment. *See County of Solano v. Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262, 1278 (1st Dist. 1999) ("[I]t is not essential that money be paid directly to the recipient by the party seeking restitution."). Likewise, restitution is not limited to property to which plaintiffs otherwise have a legal right. *Id.* at 1279 ("A transferee with knowledge of the circumstances surrounding the unjust enrichment may be obligated to make restitution."). Restitution can include"any form of advantage" conferred on Magellan, including the premiums that Blue Shield shared with it and the costs it avoided by not having to maintain an adequate network and accurate directory. *Id.* at 1278. Magellan also argues that Plaintiffs fail to satisfy Rule 9(b), but, as described above, that is incorrect.

## VII.    ERISA DOES NOT PREEMPT ROIZ'S STATE LAW CLAIMS (COUNTS 7–10)

Roiz is the lone Plaintiff enrolled in an ERISA plan. ERISA does not preempt her UCL, intentional misrepresentation, negligent misrepresentation, and unjust enrichment claims because they do not reference and have no meaningful connection to her ERISA plan. ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). However, the Supreme Court has cautioned against applying "uncritical literalism" to the interpretation of this provision, and finds preemption only when the state law "[1] has a connection with or [2] reference to" an ERISA plan. *California Div. of Lab. Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 324–25 (1997).

---

[13] Plaintiffs concede that, because they have indisputably enforceable contracts with Blue Shield, they cannot pursue this claim against Blue Shield.

23

None of the state laws underpinning Roiz's claims references ERISA or even health insurance. A state law falls into this category "if it is premised on the existence of an ERISA plan or if the existence of the plan is essential to the claim's survival." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019). This category therefore only preempts a state law that "makes specific reference to" or "is premised on the existence of" an ERISA plan, but has no bearing on negligence, fraud, or other generic state law claims that do not address ERISA plans. *The Meadows v. Emps. Health Ins.*, 47 F.3d 1006, 1010 (9th Cir. 1995).

Similarly, none of Roiz's state law claims has an impermissible connection with her ERISA plan. Under this prong, a claim is preempted if it "governs a central matter of plan administration,'" "interferes with nationally uniform plan administration," or "bears on an ERISA-regulated relationship." *Depot*, 915 F.3d at 666. This inquiry begins with a "presumption that Congress did not intend to supplant state laws regulating a subject of traditional state power," such as "[p]reventing sellers of goods and services, including benefit plans, from misrepresenting the contents of their wares." *Id.* (cleaned up). This presumption is not overcome simply because a claim "involves an ERISA-regulated relationship," particularly when the state law claims "focus on the misrepresentations made by defendants while they were operating just like any other commercial entity," as Blue Shield and Magellan were here. *Id.*

The only case cited by Magellan in support of "connection" preemption arises in a fundamentally different context: a provider's claims for breach of contract based on denial of reimbursement. *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 103 F.4th 597 (9th Cir. 2024). *See also* Mag. Mot. at 5. In *Bristol*, the provider's claims were preempted because they were an attempt "to secure plan-covered payments … through the alternative means of state contract law." *Id.* at 603. The plaintiff's state law claims were preempted because they would, in effect, "risk stripping [plan administrators] of their ability to enforce plan terms." *Id.* at 605. The impact of these claims on plan administration is radically different from that of the claims that the Ninth Circuit has found not to be preempted, such as state law claims based on misrepresentations and unfair trade practices in the marketing of health insurance plans. *See Depot*, 915 F.3d at 667 (state law claims were unconnected to ERISA in part because "the misrepresentations occurred, at

24

least initially, before plaintiffs ever agreed to subscribe to a plan"); *see also Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1032 (9th Cir. 2021) (negligent misrepresentation claim by pension plan enrollee for misstatement of plan benefits not preempted).

Here, Roiz's state law claims all revolve around Defendants' misrepresentations related to plan benefits that induced her to enroll in her plan, placing them squarely outside of the scope of ERISA's preemption. Magellan's theories of preemption are based on the exact "uncritical literalism" that the Supreme Court has condemned.

## VIII.    ROIZ STATES AN IMPROPER-DENIAL-OF-BENEFITS CLAIM (COUNT 11)

### A.    Roiz Was Not Required to Exhaust Administrative Remedies

Roiz's denial-of-benefits claim under ERISA cannot be dismissed for lack of exhaustion. A plaintiff is not required to plead exhaustion under ERISA. *See Methodist Hosp. v. Blue Cross*, 2011 WL 13186107, at *5 (C.D. Cal. 2011). Moreover, a "claimant need not exhaust when the plan does not require it." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014); *see also Laura B. v. United Health Grp. Co.*, 2017 WL 3670782, at *6 (N.D. Cal. Aug. 25, 2017). Blue Shield attempts to evade this rule by twisting the optional grievance process outlined in Roiz's plan into a mandatory one. *See* BS Mot. at 30. None of the grievance options provided by Roiz's plan is mandatory, and no part of the plan states or implies that a member must follow a specific administrative review process before filing a lawsuit. *See* Dkt. No. 42-2 at 98 ("you *can* then submit a grievance" (emphasis added); "you *can* appeal the denial" (emphasis added)); 99 ("[Y]ou *may* request an external exception request review." (emphasis added)). Although plan documents contain stock language stating that one may pursue a civil action under ERISA "if all required reviews of your claim have been completed" (Dkt. No. 42-2 at 100), this provision is meaningless here because the plan does not require any claim reviews.

### B.    The FAC Establishes that Roiz Exhausted the Optional Grievance Process

Even if Roiz were required to have complied with a particular process before bringing suit and to plead exhaustion, the FAC provides ample detail of her attempts to follow the process described in her plan documents. The provisions cited by Blue Shield (BS Mot. at 14) and other

25

plan documents state that a plan member who is struggling to find in-network care may seek assistance by calling customer service. FAC ¶ 189. Roiz repeatedly called customer service, notified them of her issues, requested assistance locating an in-network provider, and sought coverage to continue seeing her out-of-network provider at in-network rates in the absence of an available in-network provider. *Id*. ¶¶ 58, 61, 208. When she informed customer service that she was unable to find an in-network provider, they provided no assistance and instead informed her that she had to continue searching through the inaccurate directory. *Id*. ¶¶ 62, 208. Roiz substantially complied with the process laid out in her plan, and because Blue Shield failed to respond to Roiz's complaint as required by the plan, any further steps she could have taken would not have provided an appropriate remedy. *See Spinedex*, 770 F.3d at 1299 (finding exhaustion when a plan "fails to establish or follow claims procedures"); *see also Norris v. Mazzola*, 231 F. Supp. 3d 412, 421 (N.D. Cal. 2017) (no need to exhaust when "pursuing internal plan remedies would be futile").

### C.    Roiz Adequately Alleges Denial of Multiple Benefits

Defendants erroneously argue that the FAC fails to state a claim for denial of benefits. BS Mot. at 29; Mag. Mot. at 17. To state a claim for relief under § 1132(a)(1)(B), a plaintiff must allege "the existence of an ERISA plan as well the provisions of the plan that entitle it to benefits." *LD v. United Behav. Health*, 508 F. Supp. 3d 583, 592–93 (N.D. Cal. 2020).

The FAC clearly identifies several provisions of Roiz's Platinum Full plan that entitle her to benefits and alleges in detail how Defendants failed to provide those benefits, including: (i) in-network mental health coverage (FAC ¶¶ 128, 129, 263); (ii) a "right to receive timely and geographically accessible" mental health services (*id*. ¶¶ 194, 202, 204, 234, 263); (iii) a reliable, up-to-date directory for locating available, in-network providers (*id*. ¶¶ 60, 65, 145–46, 149, 187); 191; (iv) assistance scheduling appointments with in-network providers (*id*. ¶¶ 61, 62, 201, 203); (v) an appointment with a provider within 10 business days of request (*id*. ¶¶ 62, 201, 203); and (vi) coverage of an out-of-network provider's services at in-network rates when Defendants fail to identify an available, in-network provider (*id*. ¶¶ 62, 153, 157–59, 201–03, 205).

Defendants' narrow focus on the denial of Roiz's request to extend coverage for her existing provider (BS Mot. at 29; Mag. Mot. at 18) completely fails to address the numerous other ways in which they failed to provide benefits due to Roiz under her plan. The term "benefits" is defined broadly to include not just financial benefits that the plan is responsible for paying, but any of "the specific advantages provided to covered employees, as a consequence of their employment, for particular purposes connected to alleviating various life contingencies." *DB Healthcare, LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868, 874 (9th Cir. 2017).

Magellan likewise misses the point by arguing that Roiz's use of particular search criteria like provider gender and specialization—criteria that Magellan itself supplies for filtering results—somehow invalidates her efforts to locate an in-network provider. *See* Mag. Mot. at 18. The issue is not, as Magellan's framing suggests, that Roiz was being too picky when searching for a female provider specializing in grief after suffering two miscarriages. Rather, the issue is that Defendants did not identify any available provider, as they were required to do under the plan. In the absence of identifying an in-network provider, the plan required them to approve coverage for an out-of-network provider, which the FAC also alleges they did not do. FAC ¶¶ 153, 157–59, 201–04. Under the terms of Roiz's plan, Defendants were required to either schedule an appointment with an available participating provider or approve Roiz's request to see an out-of-network provider. Simply informing her that there were in-network providers available, even after she explained that she was unable to find one using the directory, is not sufficient to comply with these terms.

As described above, under the terms of her plan as alleged in the FAC, Roiz is entitled to accessible mental health services, a robust network of providers available to supply those services, an accurate directory, assistance locating a provider, and coverage for out-of-network services when an in-network provider is unavailable. Defendants fell short on all of these fronts.

## IX.    ROIZ STATES A BREACH-OF-FIDUCIARY-DUTY CLAIM (COUNT 12)

Roiz has adequately alleged a claim for breach of fiduciary duty under ERISA, which requires a plaintiff to allege that "(1) the defendant was a fiduciary; (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages." *Mejia v. Credence Mgmt. Sols.*, 782 F. Supp. 3d 884, 890 (C.D. Cal. 2025). Defendants present a misleadingly narrow view of Roiz's

27

claim, arguing that it is duplicative of her denial-of-benefits claim and involves only ministerial functions because the claim concerns only the denial of Roiz's request for coverage of an out-of-network provider.  BS Mot. at 30–32; Mag. Mot. at 19–21.  In reality, Roiz alleges that Blue Shield and Magellan breached their fiduciary duties in many other ways, including by failing to properly maintain their provider directory, failing to ensure that their network was adequate to meet members' needs, and making false representations about the plan, including about the accuracy of the directory, the size of the network, and the availability of care.  As alleged, each of these breaches occurred when Defendants were acting as fiduciaries and caused Roiz extensive damages.

## A.    Magellan Acted as a Fiduciary with Respect to the Conduct at Issue

Magellan argues that it was not acting as a fiduciary with respect to any of the conduct underlying Roiz's breach-of-fiduciary-duty claim (Mag. Mot. at 19–20), but the case law is clear that a third party with responsibility for the control of the plan, interpretation of plan terms, or authorization of benefits exercises discretionary authority giving rise to fiduciary duties.  *See*, *e.g.*, *IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d 1415, 1420 (9th Cir. 1997).  Magellan concedes that denial of coverage for Roiz's out-of-network provider is one such discretionary action (Mag. Mot. at 20), but the FAC also identifies several other discretionary actions taken by Magellan beyond the denial of her request for out-of-network coverage.  For example, the FAC alleges that Magellan "exercise[d] discretionary authority with respect to the administration of the plans and payment of plan benefits," including when interpreting the plan terms, developing plan policies, and maintaining the directory and other plan documents.  FAC ¶ 399.  Magellan's focus on "contact between Roiz and Magellan" as the only conduct that could give rise to a fiduciary relationship is puzzling and has no support in case law.  *See* Mag. Mot. at 19.

## B.    The FAC Alleges Breaches of Multiple Duties

As fiduciaries, Defendants owed Roiz and other class members duties of loyalty, care, and disclosure.  An ERISA fiduciary must discharge its responsibilities "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of … providing benefits to participants and their beneficiaries."  29 U.S.C. § 1104(a)(1).  The Ninth Circuit has repeatedly held that the duties of loyalty and disclosure under ERISA prevent fiduciaries from

28

"misrepresent[ing] the terms or administration of a plan." *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995); *see also Warmenhoven v. NetApp, Inc.,* 13 F.4th 717, 726 (9th Cir. 2021); *King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730, 744 (9th Cir. 2017). ERISA also "imposes an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1051 (9th Cir. 2020).

The FAC provides detailed allegations of the ways in which Defendants breached these duties, including by misrepresenting the plan's terms and administration. *See* FAC ¶¶ 60, 145, 211 (detailing misrepresentations made through the provider directory); 150, 177, 179, 181, 182, 207–08, 211 (detailing misrepresentations about the size and adequacy of the network, availability of care, and availability of coverage under the plan); 154, 208 (detailing misrepresentations of the terms of the plan by Defendants' customer service agents); 189, 201 (detailing misrepresentations of the availability of assistance from Defendants in locating an available provider); 190–193 (detailing misrepresentations about the reliability and accuracy of the directory); 148 (detailing noncompliance with applicable law); 402 (explaining Defendants' intentional inflation of network size to increase enrollment). The FAC also alleges extensive financial and non-financial harms caused by these breaches. *See id.* ¶¶ 236, 404.

Blue Shield attempts to frame each of these actions as a "corporate business decision" that is insulated from liability under ERISA. BS Mot. at 32. This argument grossly mischaracterizes the carveout that courts have recognized for business decisions. While courts have recognized that some administrative business decisions involve no fiduciary duty, those cases all found that no fiduciary duty arose from decisions related to internal corporate governance and management as opposed to decisions related to the administration of an ERISA plan. *See Paulsen v. CNF Inc.*, 559 F.3d 1061, 1076 (9th Cir. 2009) (no duty related to corporate restructuring decision); *Acosta v. Brain*, 910 F.3d 502, 518 (9th Cir. 2018) (no duty arising from decision to place an employee on leave); *Ballaris v. Wacker Siltronic Corp.*, 2002 WL 926272, at *2 (D. Or. 2002) (no duty related to payroll administration); *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, 2005 WL 1972565, at *4–5 (D. Or. 2005) (failure to *pay* overtime did not implicate duty

29

but failure to *credit* unpaid overtime toward pension did). Blue Shield's attempts to stretch this doctrine to cover any decision made in the course of its business would effectively insulate it from any liability under ERISA, which is clearly not the purpose of this carveout. *See Ballaris*, 2002 WL 926272, at *2 ("ERISA does not require day-to-day corporate business transactions, which may have a collateral effect on prospective, contingent employee benefits, be performed solely in the interest of plan participants.").

### C.     Roiz's Fiduciary-Duty Claim Is Not Duplicative

Blue Shield also argues that Roiz is barred from raising this claim because it is duplicative of her denial-of-benefits claim (BS Mot. at 31), ignoring the fact that this claim seeks equitable relief that is unavailable under 29 U.S.C. § 1132(a)(1)(B) (which governs denial of benefits). Although a fiduciary-duty claim under 29 U.S.C. § 1132(a)(3) is inappropriate where plaintiffs have an adequate remedy under another provision of ERISA, Roiz seeks much needed injunctive relief under her § 1132(a)(3) claim that is unavailable under her denial-of-benefits claim. *See* FAC ¶¶ 404-08 (seeking equitable relief that, among other things, requires Defendants to maintain an adequate network and accurate directory). Without this relief, Roiz and the putative class will continue to struggle to find care in Defendants' plan. Indeed, "allowing plaintiffs to seek relief under both § 1132(a)(1)(B) and § 1132(a)(3) is consistent with ERISA's intended purpose of protecting participants' and beneficiaries' interests." *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 962 (9th Cir. 2016).[14]

### X.     ROIZ STATES AN MHPAEA CLAIM (COUNT 13)

Finally, Roiz has adequately alleged a violation of the MHPAEA against Blue Shield. "The [MHPAEA] requires that any limitations on 'mental health or substance use disorder benefits' in an ERISA plan be 'no more restrictive than the predominant treatment limitations applied to

---

[14] Although the FAC cites 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3) as bases for the breach-of-fiduciary-duty claim, Roiz concedes that §§ 1109(a) and 1132(a)(2) provide no basis for individual relief. However, § 1132(a)(3) does provide individual relief, *see Varity Corp. v. Howe*, 516 U.S. 489, 510 (1996), and does not require Roiz to plead a reduction in the value of plan assets or another injury to the plan itself, *see Zisk v. Gannett Co. Income Prot. Plan*, 73 F. Supp. 3d 1115, 1118 (N.D. Cal. 2014).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS | Case NO. 3:25-cv-09978-WHO

substantially all [covered] medical and surgical benefits." *Ryan S. v. UnitedHealth Grp., Inc.*, 98 F.4th 965, 971 (9th Cir. 2024) (quoting 29 U.S.C. § 1185(a)(3)(A)(ii) (alteration in original)).  As the Ninth Circuit has recognized, an MHPAEA violation can occur in several ways, including when the insurer applies a facially neutral plan in a way that disfavors recipients of mental health benefits. *See id.* at 971–72.  The Ninth Circuit has emphasized that, at the pleading stage, plaintiffs face a low burden and "must merely allege facts sufficient to suggest that the challenged process is specific to [mental health] claims in order to meet the plausibility pleading standard." *Id.* at 973.

Plaintiffs have considerably surpassed their minimal pleading burden.  They allege that Blue Shield (1) maintained network adequacy and directory accuracy standards that were much lower for mental health providers than medical providers (*see, e.g.*, FAC ¶¶ 65–69, 101–07, 275–77, 413–16); (2) denied Plaintiffs' requests to cover out-of-network mental health care at in-network rates (after Plaintiffs were unable to find in-network providers) but did not apply such treatment limitations to claims for medical and surgical benefits (*see, e.g.*, *id.* ¶¶ 62, 157–59, 264, 413); and (3) failed to take steps to remedy disparities between their mental health and medical provider networks (*id.* ¶ 414).  *See* 29 C.F.R. § 2590.712(c)(4)(ii) (MHPAEA violation can be based on disparate "[s]tandards related to network composition, including but not limited to … procedures for ensuring the network includes an adequate number of each category of provider and facility to provide services under the plan or coverage."); *id.* § 2590.712(c)(4)(iii)(B) ("material differences in access to mental health and substance abuse use disorders as compared to medical/surgical benefits … will be considered a strong indicator" of MHPAEA violation).  Plaintiffs also cite scholarship and congressional testimony showing that ghost networks disparately impact individuals with mental health disorders.  FAC ¶¶ 43–49; *see Ryan S.*, 98 F.4th at 973–74 (government report helped establish MHPAEA violation).

These allegations suffice to meet Plaintiffs' minimal pleading burden.  As the Ninth Circuit has emphasized, plaintiffs asserting an MHPAEA claim "need not specify the different process that allegedly applies to the analogous category of medical/surgical benefits," because such plaintiffs "would have no basis to determine the process used for those analogous claims." *Ryan S.*, 98 F.4th at 972.  Rather, it is sufficient for an MHPAEA plaintiff to "merely allege facts

31

sufficient to suggest that" the disparity "is specific to [mental health] claims in order to meet the plausibility pleading standard," *id.* at 973, while the specific reasons causing the disparity can await discovery, *see id.* at 972–73. Plaintiffs have met that minimal burden, as described above. Blue Shield's reliance on *Andrew P. v. Blue Cross of California* is inapposite because, in that case, the MHPAEA claim alleged nothing more than that "the Plan violated the [MHPAEA] 'in application or effect.'" 2025 WL 3637030, at *3 (N.D. Cal. Dec. 15, 2025). Plaintiffs here allege far more, thus satisfying their obligation to "simply allege that the insurer applied the plan in a disparate way as to mental health or substance use disorder treatment, regardless of what the plan itself says." *Id.* (cleaned up).

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss should be denied in their entirety. If the Court dismisses any of Plaintiffs' claims in whole or in part, Plaintiffs respectfully request leave to amend. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("[A] district court should grant leave to amend" after "dismissing for failure to state a claim … unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS | Case NO. 3:25-cv-09978-WHO

Dated:   New York, NY
        June 16, 2026

Respectfully submitted,

**WALDEN HARAN WILLIAMS LLP**

By:   /s/      *Jacob Gardener*

Jacob Gardener (*pro hac vice*)
250 Vesey Street
New York, NY 10281
Tel: (212) 335-2030
jgardener@whwllp.com

**POLLOCK COHEN LLP**

Steve Cohen (*pro hac vice*)
Andrea Nishi
111 Broadway, Suite 1804
New York, NY 10006
Tel: (646) 517-0542
scohen@pollockcohen.com
andrea@pollockcohen.com

**BEN TRAVIS LAW, APC**

Ben Travis (SBN 305641)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
(619) 353-7966
ben@bentravislaw.com

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS | Case NO. 3:25-cv-09978-WHO

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by CM/ECF to all counsel of record on this 16th day of June 2026.

    */s/   Jacob Gardener*
Jacob Gardener

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS | Case NO. 3:25-cv-09978-WHO