Ben Travis (SBN 305641)
**BEN TRAVIS LAW, APC**
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
(619) 353-7966
ben@bentravislaw.com

Steve Cohen (*pro hac vice*)
Andrea Nishi (*pro hac vice*)
**POLLOCK COHEN LLP**
111 Broadway, Suite 1804
New York, NY 10006
(212) 337-5361
scohen@PollockCohen.com

Jacob Gardener (*pro hac vice*)
**WALDEN HARAN WILLIAMS LLP**
250 Vesey St., 27th Floor
New York, NY 10281
(212) 335-2965
jgardener@whwllp.com

*Attorneys for Plaintiffs Jenniffer Roiz, Claudine Castillo, Candyce Marto, Kevin Maedel and The Putative Class*

Kimberly Klinsport
Kendall Waters
Kelsey Kreindler
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
(213) 972-4500
kklinsport@foley.com
kwaters@foley.com
kelsey.kreindler@foley.com

Jason Wu
Evan Hamling
**FOLEY & LARDNER LLP**
One Market Plaza
55 Spear Street Tower, Suite 1900
San Francisco, CA 94105
(415) 984-9848
jwu@foley.com
ehamling@foley.com

*Counsel for California Physicians' Service DBA Blue Shield of California*

Steven Cady (*pro hac vice*)
Dylan McDevitt (*pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5321
scady@wc.com

*Counsel for Magellan Health, Inc., Magellan Healthcare, Inc., and Human Affairs International of California*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

JENNIFFER ROIZ, CLAUDINE CASTILLO, CANDYCE MARTO, and KEVIN MAEDEL on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CALIFORNIA PHYSICIANS' SERVICE DBA BLUE SHIELD OF CALIFORNIA, MAGELLAN HEALTH, INC., MAGELLAN HEALTHCARE, INC., and HUMAN AFFAIRS INTERNATIONAL OF CALIFORNIA,

Defendants.

Case No. 3:25-cv-09978-WHO

**JOINT CASE MANAGEMENT STATEMENT**

**Case Management Conference**
**DATE**: August 5, 2026

**TIME**: 2:00 PM

**JUDGE**: Hon. William H. Orrick

The Parties jointly submit this Case Management Statement in advance of their Case Management Conference on August 5, 2026, at 2:00 PM pursuant to Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, and this Court's Order to Extend Time for Plaintiffs to Amend Complaint and to Set Briefing Schedule for Motions to Dismiss dated March 5, 2026. ECF No. 47.

## 1. JURISDICTION & SERVICE

Federal law provides an essential element of Jenniffer Roiz, Claudine Castillo, Candyce Marto, and Kevin Maedel's ("Plaintiffs") claims. Accordingly, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2).

Service has been completed, as follows:

Magellan Health, Inc., Magellan Healthcare, Inc., and Human Affairs International of California (together, "Magellan Entities") submitted a signed waiver of service on December 12, 2025. ECF No. 12.

California Physicians' Service DBA Blue Shield of California ("Blue Shield") was personally served on December 15, 2025, and proof of personal service was submitted on December 17, 2025. ECF No. 13.

Defendants do not dispute that the Court has personal jurisdiction over Plaintiffs' claims and this is the correct venue for Plaintiffs' claims.

## 2. FACTS

**Plaintiffs' Position:**

Plaintiffs Jenniffer Roiz, Claudine Castillo, Candyce Marto, and Kevin Maedel bring this putative class action alleging that Defendants maintain a fraudulent "ghost network" of mental health providers. Plaintiffs allege that Defendants' provider directory lists supposedly available, in-network mental health providers, most of whom are non-existent, not in-network, not accepting new patients, and/or otherwise unavailable.

Plaintiff Roiz enrolled in her Blue Shield plan specifically for mental health coverage. She was not able to schedule an appointment with any of the providers she attempted to contact from

Defendants' directory because the listed providers were out-of-network or unavailable, despite the directory listing those providers as in-network and available to take new patients. Unable to afford out-of-network care, she has been forced to go without treatment.

Plaintiff Castillo sought urgent mental health care for her 16-year-old son after he expressed suicidal ideation. Magellan provided her a list of supposedly available providers, but they were all out-of-network, unavailable, or did not offer the services listed. When she reported this, Magellan expanded the search radius, yielding only providers that were too far away for regular treatment. To date, her son has received no care.

Plaintiffs Marto and Maedel, a married couple, have repeatedly searched for mental health providers. They have contacted dozens of providers listed in Defendants' directory, all of whom have been out-of-network or otherwise unavailable.

**Defendants' Position:**

Defendants dispute Plaintiffs' characterization of Defendants' mental health provider networks and deny that they maintain "fraudulent" or inadequate networks. Defendants contend that Plaintiffs' allegations are based on a small number of individual anecdotes and do not reflect the actual breadth or operation of Defendants' behavioral health networks, which include a wide range of in-network mental health providers and telehealth options. Defendants further contend that Plaintiffs did not exhaust the contractual grievance and appeal processes available to them, and that many of Plaintiffs' asserted theories are inconsistent with the terms of the governing plan documents and applicable law.

Defendants have a reasonable network of behavioral health providers, including telehealth behavioral health providers available to see members. Consistent with and subject to the terms of members' health plans and applicable law, Defendants may provide coverage for behavioral health care received from out of network providers in situations where appropriate. Defendants are available to help members seek in network care by phone or electronic contact through the member portal. In accordance with each member's contract of coverage, members may escalate concerns about access to care by contacting Defendants or the appropriate California regulator. If Plaintiffs believe they incurred out of pocket expenses because they could not locate an in-network provider, Defendants encourage Plaintiffs to work with Defendants through the contractual grievance and appeal processes

so that any such issues can be reviewed and addressed, as appropriate, under the terms of their health plans. Help is available through the phone number on the back of each member's health-care card or by pursuing the available help in each member's insurance contract. Although Defendants generally do not own or control behavioral health providers, Defendants are available to assist and have member-care services available to help members find the care they need. If Plaintiffs' counsel agrees that Defendants may contact Plaintiffs, Defendants are willing to make themselves available to discuss these processes and options for obtaining care.

## 3. LEGAL ISSUES

Plaintiffs anticipate that the following legal issues will be argued based on Plaintiffs' present allegations, including whether:

- Blue Shield allegedly breached contractual obligations to maintain an accurate directory, an adequate mental health provider network, and contractually specified appointment-access timeframes, and to provide coverage of out-of-network care at in-network rates when no adequate in-network provider was available.
- Plaintiffs are intended third-party beneficiaries of and have standing to enforce contracts between their employers and Blue Shield.
- Plaintiffs are intended third-party beneficiaries of the Blue Shield–Magellan contract, and Magellan allegedly breached its obligations as Blue Shield's mental health services administrator to maintain an accurate directory and adequate network, causing Plaintiffs' damages.
- Defendants allegedly breached the implied covenant of good faith and fair dealing by allegedly acting in bad faith to frustrate Plaintiffs' ability to access the benefits to which they were contractually entitled.
- Defendants allegedly violated Cal. Bus & Profs. Code § 17200 by allegedly misrepresenting their plan coverage and provider networks in violation of federal and state laws.
- Defendants allegedly violated the No Surprises Act, 42 U.S.C. § 300gg-115(a)(2), by allegedly failing to update the provider directory at least once every 90 days and by

allegedly failing to establish a procedure to remove unverified providers from the directory.

- Defendants allegedly violated the Affordable Care Act, 45 C.F.R. § 156.230(b), by allegedly failing to publish an up-to-date, accurate, and complete provider directory, and allegedly failing to identify providers that are not accepting new patients.
- Defendants allegedly violated Section 720 of ERISA, 29 U.S.C. § 1185i(a)(2), and Section 9820 of the Internal Revenue Code, 26 U.S.C. § 9820(a)(2), by allegedly failing to verify and update the provider directory at least once every 90 days, to remove providers from the directory when Defendants were unable to verify the providers' information, and to update the directory within two days of receiving new information from a provider.
- Defendants allegedly violated Cal. Bus. & Profs. Code § 17500 by disseminating untrue and misleading statements regarding the breadth of the mental health provider network, mental health providers' network status and availability, and the mental health benefits included in Blue Shield's plans.
- Defendants allegedly violated Cal. Ins. Code § 790.02 by allegedly making false statements, which they knew or should have known were untrue, deceptive, or misleading, regarding the breadth of the mental health provider network, the availability of in-network mental health care, and the mental health coverage provided by Blue Shield's plans.
- Defendants allegedly violated Knox-Keene Act § 1360 by allegedly making statements about mental health coverage and network breadth in their written advertising materials and Evidences of Coverage that would mislead a reasonable person.
- Defendants allegedly violated Cal. Ins. Code § 10133.15 and Knox-Keene Act § 1367.27 by allegedly failing to publish and maintain an accurate provider directory.
- Defendants allegedly violated Cal. Ins. Code § 10133.54 and Knox-Keene Act § 1367.03 by allegedly failing to maintain adequate networks of providers to allow Plaintiffs and Class members to access mental health care within ten business days of

requesting an appointment.

- Defendants allegedly violated Section 2240.01 of Chapter 10 of the Cal. Code of Regulations by allegedly failing to maintain adequate networks of providers, allegedly failing to make accurate information about plan benefits and providers available to members, and allegedly failing to arrange appropriate out-of-network care when in-network care was not available.
- Defendants allegedly violated Cal. Health & Safety Code § 1374.72 by allegedly failing to maintain an adequate, accurate network of qualified, available mental health professionals to meet the needs of plan members, while successfully maintaining a comprehensive and accurate network of hospital, medical, and surgical providers. Blue Shield allegedly further violated Section 1374.72 by outsourcing and inadequately supervising the administration of its mental health services to Magellan, a third-party entity, while administering their hospital, medical, and surgical benefits in-house.
- Defendants allegedly made material omissions and affirmative misrepresentations regarding the accuracy of their provider directory, the breadth and adequacy of their provider network, and the ease of obtaining access to in-network mental health care. Defendants allegedly made these omissions and misrepresentations to create the appearance of network adequacy and compliance with federal and state law and to induce individuals to choose Blue Shield health insurance over competitors' health insurance and to prevent them from obtaining covered care.
- Defendants allegedly negligently misrepresented their provider network and the availability of mental health providers by allegedly failing to provide accurate information about the in-network status, qualifications, availability, and other details regarding providers.
- Defendants allegedly failed to use reasonable care or competence in providing information about in-network providers and in publishing the provider directory.
- Defendants have allegedly been unjustly enriched by misrepresenting their provider network and coverage.

- It is inequitable and unjust for Defendants to retain the benefits of allegedly misrepresenting their provider network to increase enrollment and decrease costs.
- Defendants allegedly improperly denied benefits under ERISA by allegedly denying coverage based on the false premise that in-network providers were available.
- Defendants allegedly breached their ERISA fiduciary duties of loyalty and care by allegedly misrepresenting plan benefits and the size of their provider networks to increase enrollment and profits.
- Blue Shield allegedly violated the Mental Health Parity and Addiction Equity Act, 42 U.S.C. § 300gg-26, by allegedly failing to have processes to allow Plaintiffs to access mental health care without facing limitations that do not apply to medical care, including by allegedly failing to maintain an adequate network of mental health providers while maintaining an adequate network of medical providers within the same geographic area.

## 4. MOTIONS

On February 17, 2026, Blue Shield filed a motion to dismiss. ECF Nos. 41–42. On February 24, 2026, the Magellan Entities filed a motion to dismiss. ECF No. 43. On March 24, 2026, Plaintiffs amended their complaint. ECF No. 48. On May 5, 2026, Blue Shield and the Magellan Entities filed separate motions to dismiss Plaintiffs' First Amended Complaint ("FAC"). ECF Nos. 50–52. On June 16, 2026, Plaintiffs filed an omnibus opposition to Defendants' motions to dismiss. ECF No. 56. On July 7, 2026, Blue Shield and the Magellan Entities filed separate replies in support of their motions to dismiss. ECF Nos. 57–58. Plaintiffs anticipate filing a motion for class certification under Rule 23. Plaintiffs and Defendants anticipate filing motions for summary judgment or adjudication under Rule 56.

## 5. AMENDMENT OF PLEADINGS

On March 24, 2026, Plaintiffs filed their FAC. ECF No. 48.

## 6. EVIDENCE PRESERVATION

The Parties have reviewed the Court's Guidelines for the Discovery of Electronically Stored Information, are aware of their obligations, and have taken appropriate steps to preserve potentially

relevant evidence. The Parties confirm that they have met and conferred regarding such obligations.

**7. DISCLOSURES**

The Parties sent each other Initial Disclosures by February 12, 2026.

**8. DISCOVERY**

The parties have not yet served discovery requests. The parties anticipate that they will stipulate to several agreements regarding discovery, including a stipulated protective order for confidential material and an ESI protocol.

**Defendants' position:**

Defendants propose that discovery proceed in stages. In the first stage, discovery will focus on the named Plaintiffs' claims, including their plan documents, efforts to obtain care, communications with Defendants, and alleged damages, as well as Defendants' defenses to those claims. Class-wide and merits discovery beyond the named Plaintiffs would then follow, if appropriate, after the Court has ruled on Defendants' motions to dismiss and after the Parties have completed discovery concerning the named Plaintiffs. Defendants are not, as Plaintiffs suggest, proposing the complete bifurcation of class and merits discovery but rather proposing to limit the scope of *all* discovery pending the outcome of Defendants' motions to dismiss. The First Amended Complaint brings more than a dozen discrete counts, all of which are subject to the pending motions. The scope of the case is thus entirely unclear, and limiting discovery to the experience and claims of the named Plaintiffs in the meantime allows the case to proceed on a cost-effective basis while the Court decides which if any of Plaintiffs' claims may proceed. Should any of Plaintiffs' claims survive the motions to dismiss, Defendants agree that both class and merits discovery would then proceed together in a manner consistent with the Court's rulings on the pending legal issues. *See In re Netflix Antitrust Litig.*, 506 F.Supp.2d 308, 321 (N.D. Cal. 2007) (allowing limited portion of discovery to proceed and staying the rest pending the outcome of motion to dismiss).

**Plaintiffs' position:**

Plaintiffs do not believe discovery should proceed in phases. Discovery focused on the named plaintiffs will necessarily overlap considerably with class-wide discovery. Bifurcating the two is impractical and inefficient and will generate unnecessary, time-consuming disputes regarding the

proper scope of each phase. That is why courts, including this Court, disfavor bifurcation of discovery. *See, e.g.*, *Johnson v. Q.E.D. Environmental Systems, Inc.*, No. 16-cv-1454-WHO, ECF No. 28 (N.D. Cal. May 10, 2016) (Orrick, J.) ("I do not bifurcate discovery between class and merits issues[.]"); *see also Jane Doe et al. v. Carelon Behavioral Health, Inc.*, No. 25-cv-3489, ECF No. 30 ¶ 14 (S.D.N.Y. May 5, 2026) (rejecting bifurcation of plaintiffs and class-wide discovery in similar "ghost network" putative class action).

Plaintiffs anticipate that, in light of the complexity of the claims in this case, discovery will take a considerable amount of time. In discovery, Plaintiffs plan to investigate Defendants' insurance coverage, provider network, provider directory, marketing communications, policies, and knowledge of the claims alleged in the FAC, in addition to other issues relevant to Plaintiffs' allegations against Defendants.

## 9. <u>CLASS ACTIONS</u>

Plaintiffs assert claims for damages on behalf of themselves and all others similarly situated as a class action pursuant to Fed. R. Civ. P. 23(b)(3).

Plaintiffs' putative class includes all those who have purchased or enrolled in a Blue Shield plan in California at any point from 2019 through the date of class certification. Plaintiffs also seek certification of the following three Sub-Classes:

**A.** All Class members who are currently, or were previously, enrolled in any of Blue Shield's non-ERISA Plans in California at any point from four years prior to the filing of the Complaint through the date of class certification.

**B.** All Class members who are currently, or were previously, enrolled in any of Blue Shield's ERISA Plans in California at any point from November 19, 2021, through the date of class certification.

**C.** All Class members who, during the class period, paid for out-of-network care from a provider listed as in-network on Defendants' provider directory or paid for out-of-network care when there was no available in-network provider with similar qualifications within a reasonable distance.

Plaintiffs assert that they are entitled to bring this case as a class action under Fed. R. Civ. P. 23(b) based on the predominance of common issues of law and fact—including but not limited to the accuracy of representations made by Defendants, Defendants' state of mind in making these representations, the terms of Defendants' contracts (with Plaintiffs, Plaintiffs' employers, and each

other), and Plaintiffs' entitlement to damages—over individual questions needed to resolve this dispute. Plaintiffs also assert that a class action is the superior method of resolving this dispute because the Class members' claims can all be resolved by adjudicating Defendants' liability and because the case involves complex issues that Class members could not afford to litigate individually. Defendants anticipate opposing class certification based on relevant court precedent.

Defendants dispute that the matter is suitable for class treatment and will oppose class certification. Defendants contend that Plaintiffs cannot satisfy the requirements of Rule 23, including typicality, adequacy, predominance, and superiority. Defendants also contend that Plaintiffs' proposed class period, purporting to go back as far as 2019, is overbroad because the applicable statutes of limitations bar class claims for damages arising from conduct outside the relevant limitations periods. Defendants will argue that any putative class or Sub-Classes must be limited accordingly, and that claims for damages falling outside those periods cannot properly be included in any certified class. Among other things, Defendants anticipate arguing that:

(a) the proposed class and Sub-Classes are not ascertainable and would require individualized, member-by-member inquiries to determine class membership;

(b) the claims of the named Plaintiffs are not typical of those of the putative class because they turn on unique facts regarding each Plaintiff's individual coverage, efforts to obtain care, communications with Defendants, and alleged damages;

(c) the resolution of Plaintiffs' claims will require highly individualized determinations regarding, for example, each member's plan terms, benefit determinations, medical needs, access to providers, and alleged harm, such that common issues do not predominate; and

(d) a class action is not a superior method of adjudication in light of, among other things, the individualized nature of any alleged injury, the availability of internal appeals and regulatory complaint processes, and the manageability concerns associated with administering the broad class and Sub-Classes Plaintiffs propose.

The Parties propose that class certification be briefed and decided following fact discovery and before motions for summary judgment. The Parties propose that Plaintiffs' motion for class certification will be filed by October 15, 2027, and that Defendants have sufficient time to oppose class certification with the assistance of experts. All attorneys of record for the Parties have reviewed the Procedural Guidance for Class Action Settlements.

**10. RELATED CASES**

The Parties are not aware of any cases related to this one.

**11. RELIEF**

Plaintiffs respectfully request that relief be entered in the form of a judgment as follows:

a. declaring that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, certifying the Class and Sub-Classes as requested herein, designating Plaintiffs as the Class Representatives, and appointing the undersigned counsel as Class Counsel;

b. awarding all injunctive relief permitted by law or equity;

c. awarding compensatory damages, restitution, disgorgement, and any other relief permitted by law or equity;

d. awarding statutory damages and penalties in addition to actual damages;

e. awarding treble damages;

f. awarding punitive damages in an amount deemed appropriate by the Court;

g. awarding Plaintiffs and the Class pre-judgment and post-judgment interest;

h. awarding Plaintiffs reasonable attorneys' fees and costs; and

i. awarding Plaintiffs and the Class such other relief as this Court may deem just and proper under the circumstances.

**12. SETTLEMENT AND ADR**

The Parties have not yet tried to settle the case. The Parties have agreed on a settlement conference with a magistrate judge as the form of Alternative Dispute Resolution (ADR) for this case.

The Parties have complied with ADR Local Rule 3-5. Once the Parties have obtained requisite discovery, the Parties will propose a date for a settlement conference.

**13. OTHER REFERENCES**

The Parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14. NARROWING OF ISSUES**

The Parties have not identified any issues that they mutually agree to narrow at this stage but will meet and confer on any such issues as they arise. Defendants' motions to dismiss are also currently pending with the Court. The Parties have identified that the following issue as one that can be narrowed by motion: whether Plaintiffs may maintain the action as a class action, based upon Rule 23.

**15. SCHEDULING**

The Parties propose the following schedule:

Discovery shall commence after the initial case management conference, which will be held on August 5, 2026, subject to any ruling regarding phasing that may be issued by the Court.

Plaintiffs' expert disclosures shall be due by May 27, 2027.

Fact discovery, including fact witness depositions, shall be complete by May 27, 2027.

Defendants' expert disclosures shall be due by July 8, 2027.

Plaintiffs' rebuttal expert disclosures shall be due by August 5, 2027.

Expert discovery shall be complete by September 30, 2027.

Plaintiffs' motion for class certification will be filed by December 16, 2027.

Defendants' opposition to class certification and any *Daubert* motions will be filed by March 16, 2028.

Motions for summary judgment will be filed based on what remains of the case no later than 90 days after class certification is approved or denied.

Pretrial conference shall be held within thirty days of the Court's order on any summary judgment motions.

The case will be ready for trial within thirty days of the pretrial conference, subject to availability of counsel.

## 16. TRIAL

The Parties expect that this case will be tried by a jury. If Plaintiffs' motion for class certification is granted, the Parties expect that trial will last approximately two weeks. If Plaintiffs' motion for class certification is denied, the Parties expect that trial will last one week.

## 17. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiffs and Defendants have filed their Certificates of Interested Persons pursuant to Civil Local Rule 3-15. ECF Nos. 16, 31, 37.

Plaintiffs certify that the following listed persons, associations of persons, firms, partnerships, corporations (including, but not limited to, parent corporations), or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Aristata Impact Litigation Fund (1) LP is a limited partnership established in Jersey that has no parent corporation. Aristata is providing funding to help to support the litigation and has a financial interest in the outcome of the litigation.

Defendant California Physicians' Service dba Blue Shield of California ("Blue Shield") certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including, but not limited to, parent corporations), or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Aries Health L.L.C., which is a Delaware LLC and the parent company of Blue Shield, and Ascendiun, Inc., which is a Delaware Nonstock Nonprofit Corporation and the parent company of Aries Health L.L.C.

## 18. PROFESSIONAL CONDUCT

The Parties attest that all attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: July 28, 2026

*/s/ Steve Cohen*
Steve Cohen*
Andrea Nishi*
Pollock Cohen LLP
111 Broadway, Suite 1804
New York, NY 10006
(646) 517-0542
scohen@PollockCohen.com

Ben Travis (SBN 305641)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
(619) 353-7966
ben@bentravislaw.com

Jacob Gardener*
250 Vesey St., 27th Floor
New York, NY 10281
(212) 335-2965
jgardener@whwllp.com

**Admitted pro hac vice*
*Counsel for Plaintiffs Jenniffer Roiz, Claudine Castillo, Candyce Marto, Kevin Maedel and The Putative Class*

*/s/ Jason Wu*
Kimberly Klinsport
Kendall Waters
Kelsey Kreindler
Foley & Lardner LLP
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
(213) 972-4500
kklinsport@foley.com
kwaters@foley.com
kelsey.kreindler@foley.com

Jason Wu
Evan Hamling
Foley & Lardner LLP
One Market Plaza
55 Spear Street Tower
Suite 1900
San Francisco, CA 94105
(415) 984-9848
jwu@foley.com
ehamling@foley.com
*Counsel for California Physicians' Service DBA Blue Shield of California*

*/s/ Steven Cady*
Steven Cady*
Dylan McDevitt*
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5321
scady@wc.com
**Admitted pro hac vice*
*Counsel for Magellan Health, Inc., Magellan Healthcare, Inc., and Human Affairs International of California*